UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | Case No. 4:05-cr-15 |
| v. ) | *Edgar* |
| ) | |
| JERRY GLENN GREEN ) | |

### MEMORANDUM AND ORDER

Defendant Jerry Glenn Green ("Green") has filed a motion to suppress evidence of a firearm found underneath his trailer pursuant to a warrantless search of the trailer by officers with the Warren County Sheriff's Department. [Court Doc. No. 24]. Green argues that evidence of the firearm found underneath his trailer should be suppressed because officers located it after searching his property without a warrant, his consent, or any other exception to the requirement of a warrant under the Fourth Amendment to the United States Constitution. For the reasons stated herein, the Court agrees. Green's motion to suppress evidence is **GRANTED**.

I.  **Background Facts**

The Court held an evidentiary hearing on Green's motion to suppress on November 14, 2005. During the hearing, the government offered the testimony of Lieutenant Jody Cavanaugh and Investigator Jackie Matheny, Jr., both of whom are employed by the Warren County Sheriff's Department. Green offered his own testimony.

A.  **Testimony of Lieutenant Cavanaugh**

On February 11, 2005 a sheriff's department helicopter was patrolling a rural area in Warren County looking for evidence of methamphetamine laboratories. Lieutenant Cavanaugh

testified that he received a radio call from the helicopter indicating that an individual had brandished a weapon at the helicopter. The officers in the helicopter were not certain whether the individual fired the weapon at them.

Lieutenant Cavanaugh proceeded to the location where the helicopter indicated the individual had brandished the weapon. When he arrived at the location, an officer in the helicopter informed him that the individual was driving a black pick-up truck and had driven the truck towards a trailer located about 100 yards away from Lieutenant Cavanaugh's position. Cavanaugh was located near a barbed wire fence at the edge of property owned by Green. The individual, whom Cavanaugh later identified as Green, was observed parking the truck behind the trailer and walking around to the front of the trailer where two other individuals were standing. The three individuals may have spoken, but Lieutenant Cavanaugh was unsure of whether they had talked to one another.

Lieutenant Cavanaugh testified that Green returned to the truck and proceeded to drive across a field towards Lieutenant Cavanaugh's position at a high rate of speed. At this point between three and five other officers were standing with Lieutenant Cavanaugh. When Green arrived at the edge of the field near the officers, the officers ordered Green out of the truck at gunpoint. Green complied, and the officers ordered him to lie down on the ground. Green also complied with this order, and the officers secured him, escorted him across the barbed wire fence at the edge of the field, and placed him in the back of Lieutenant Cavanaugh's patrol vehicle. The officers searched the truck and found ammunition in the back of the truck, but not a weapon.

Then the officers proceeded some distance down a road to a gate and driveway leading to the trailer. The gate at the end of the driveway was unlocked, and the officers drove up to the

2

Case 4:05-cr-00015   Document 36   Filed 11/17/05   Page 2 of 11   PageID #: 8

trailer. The officers asked the two individuals standing outside of the trailer if they knew where a weapon was, and the two individuals responded that they did not know where any weapon was. Lieutenant Cavanaugh testified that the individuals were not armed.

No officer asked for consent to search the trailer or the premises. The door to the trailer was open. Lieutenant Cavanaugh undertook a sweep of the inside of the trailer to locate any other individuals. The sweep lasted about a minute and a half. During that time he did not see any indication of anyone residing in the trailer nor did he find anyone inside the trailer. It appeared that the individuals outside the trailer were assisting in leveling the area to establish the trailer in a permanent location.

Shortly after Lieutenant Cavanaugh conducted his sweep, another officer, later identified as Jackie Matheny, Jr., located a weapon, a 22 caliber rifle, under the trailer. The weapon was loaded with ammunition, and one of the officers removed the ammunition from the weapon.

The officers returned to the portion of the field where the helicopter indicated that Green had brandished a weapon at the helicopter. The officers searched for used ammunition shells in the field, but failed to locate any.

### B.    Testimony of Jackie Matheney, Jr.

On February 11, 2005 Investigator Matheny received information that someone had been shooting at a sheriff department helicopter. He drove to the area, and the sheriff informed the officers to wait until other officers arrived. He observed a black pick-up truck drive to the back of a trailer. There were two other individuals at the trailer. He testified that there may have been some kind of conversion between the three individuals. Then the individual later identified as Green drove the truck across a field at a high rate of speed towards the property line and the

officers' position. The officers ordered Green out of his truck and on the ground. The officers searched the truck and found rifle shells, but no weapon. The officers drove down the road and up a driveway towards the trailer. A gate was positioned at the end of the driveway, but was open. Investigator Matheny observed two other individuals at the property. The other individuals were not armed. The officers walked around the trailer for a few minutes and when one of the individuals stooped down, Officer Matheny noticed a rise in some black plastic by a corner of the trailer. He lifted the black plastic and found a rifle underneath the plastic. The rifle was not rusted or dirty. It was loaded, and Investigator Matheny observed as another officer unloaded ammunition from the gun. The search lasted for about thirty minutes. Investigator Matheny did not enter the trailer.

### C. Testimony of Jerry Glenn Green

Green testified that he was living at the mobile home on February 11, 2005 and that he had been living there for about two or three weeks prior to that date. He was working on establishing the trailer as his residence. He slept in the trailer the night of February 10th. He testified that he had a bed, couch, TV, coffee table and clothes in a closet in the trailer on February 11th. He used a generator for electricity. He owns the trailer and about 100 acres of property on which he raises cattle. He did not consent to a search of his trailer.

## II. Analysis

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. It is a well-settled rule that under the Fourth Amendment the entrance to a house "may not be reasonably crossed without a warrant" in the absence of exigent circumstances or consent. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371 (1980) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 492, 91 S.Ct. 2022, 2051, 29 L.Ed.2d 564 (1971)); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The Supreme Court has held that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586. The curtilage, or "land immediately surrounding and associated with the home" is also protected by the Fourth Amendment. *Oliver v. U.S.*, 466 U.S. 170, 180, 104 S.Ct. 1735, 1742 (1984).

The government first argues that the search of Green's mobile home was a lawful search incident to arrest. The government is correct that an officer may search an individual subject to a valid arrest without a warrant. *See Michigan v. DeFillippo*, 443 U.S. 31, 35, 99 S.Ct. 2627, 2631 (1979). As the Supreme Court noted in *U.S. v. Robinson*, this exception encompasses two different scenarios: "The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee." 414 U.S. 218, 224, 94 S.Ct. 467, 471 (1973). In *Chimel v. California* the Supreme Court clarified that a search incident to a lawful arrest encompasses a search of the suspect's person and "the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." 395 U.S. 752, 768, 89 S.Ct. 2034, 2043 (1969). There is no constitutional justification without a warrant for extending a search beyond that area. *Id.* In *Chimel* the Supreme Court specifically disapproved of a case in which the suspect was arrested half a block from his rented room and the district court upheld the search of

the room. *See id.* at 765 n.10.

In the instant action Green is not contesting that his arrest and the subsequent search of his truck were unlawful. Green asserts, however, that the subsequent warrantless search of his trailer located at least 100 yards across an open field from the location of his arrest violated the Fourth Amendment. The government asserts that the search of the trailer was simply a search incident to arrest. For support the government relies on cases involving the arrest of individuals in vehicles and the search of the vehicle incident to the arrest. *See New York v. Belton*, 453 U.S. 454 (1981); *United States v. Hudgins*, 52 F.3d 115 (6th Cir. 1995); *United States v. Thomas*, 11 F.3d 620 (6th Cir. 1993); *United States v. Patterson*, 993 F.2d 121 (6th Cir. 1993). These cases are distinguishable from the situation at hand. In all of the cases cited by the government, the officers conducted a search of a motor vehicle in which the subject of the lawful arrest had been traveling. That is not the situation here. In the instant action, the officers searched not only the pick-up truck Green was driving, but they drove to a location at least 100 yards away from the point of arrest to search his trailer home as well. This is precisely the type of situation of which the Supreme Court disapproved in *Chimel* and to which the vehicle exception established by *Belton* and its progeny does not apply. 395 U.S. at 765 n.10.

The government also argues that the search was justified under the "exigent circumstances" exception to the Fourth Amendment's warrant requirement. The Sixth Circuit recently outlined the principles of warrantless searches based upon exigent circumstances. *See United States v. Chambers*, 395 F.3d 563, 565 (6th Cir. 2005). In *Chambers* the Sixth Circuit stated:

> The principles governing warrantless searches based on 'exigent circumstances' are fairly well settled. . . . The first and most important principle is that searches

6

> must ordinarily be cleared in advance as a part of the judicial process. . . . 'Thus the most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions.' The exceptions are 'jealously and carefully drawn,' and there must be a 'showing by those who seek exemption . . . that the exigencies of the situation *made that course imperative*.' '[T]he burden is on those seeking the exemption to show the need for it.' . . . In order for a warrantless search to pass muster, probable cause must exist, but 'no amount of probable cause can justify a warrantless seizure.' . . . because, in addition, the cause of the search must be based on an 'emergency' and hence, 'inadvertent' or unanticipated. Under these principles, officers must seek a warrant based on probable cause when they believe in advance they will find contraband or evidence of a crime. . . . When there is neither a warrant nor consent, courts will only permit a search or seizure to stand under extraordinary circumstances.

*Id.* (quoting *Coolidge*, 403 U.S. at 454-55). The Sixth Circuit has identified four categories of possible justifications for warrantless entries: "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *United States v. Rohrig*, 98 F.3d 1506, 1515 (6th Cir. 1996). In cases finding the existence of "exigent circumstances," there uniformly exists a "need for prompt action by government personnel" and "delay to secure a warrant would be unacceptable under the circumstances." *Id.* at 1517.

The government argues that exigent circumstances existed either because of the possibility of imminent destruction of evidence or due to a risk of danger to the officers involved. However, the facts in the record do not support the government's theory. Green approached the officers, complied with their orders, and allowed officers to handcuff him and place him in the back of Lieutenant Cavanaugh's vehicle. The officers did not testify that they were concerned for their safety at any time. They deliberately left the area where they arrested Green and where there was no danger to them to approach his trailer to search for the weapon.

7

[Court Doc. No. 25, Ex. B]. From where they arrested Green, they could observe two individuals at the trailer. The government presents no reason why the officers could not have secured the area or kept the two individuals under surveillance while one of them went to obtain a warrant. Upon their approach to the trailer, both Lieutenant Cavanaugh and Investigator Matheny observed that the other two individuals at the trailer were not armed. After conducting his sweep of the interior of the trailer, Lieutenant Cavanaugh knew no one else was in the trailer. The government presents no evidence suggesting that the officers feared for their safety or feared the imminent destruction of evidence.

The government further argues that the search underneath the trailer was a "protective sweep" under *Maryland v. Buie*, 494 U.S. 326, 110 S.Ct. 1093 (1990). However, it is made clear in *Buie* that a "protective sweep" is permitted only to insure officers' safety when making an arrest. 494 U.S. 325, 334. In this case both the "sweep" of the trailer itself, as well as the "sweep" that netted the rifle beneath the plastic under the trailer had no reasonable relationship to Mr. Green's earlier arrest over a hundred yards away across an open field. The officers did not need to conduct a sweep of the trailer or its undersides to insure their safety. In fact, there is no evidence that they went to the trailer out of concern for their safety. As Investigator Matheny said in his statement, the officers went to the trailer "to search for the weapon that was pointed at the helicopter." [Court Doc. No. 25, Ex. B]. The search for the firearm was not a "protective sweep." *See Buie*, 494 U.S. at 335; *United States v. Rigsby*, 943 F.2d 631, 637 (6th Cir. 1991).

Next the government argues that the search of Green's trailer was a valid warrantless search of a vehicle. It is true that courts have "long distinguished between an automobile and a home or office." *Chambers v. Maroney*, 399 U.S. 42, 48, 90 S.Ct. 1975, 1979 (1970).

8

Automobiles are deemed to be different in part because of their mobility. *See id.* at 52. The Supreme Court has held that "'[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more.'" *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S.Ct. 2013, 2014 (1999) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996)). A trailer may qualify for the vehicle exception, but the "exception has historically turned on the ready mobility of the vehicle, and on the presence of the vehicle in a setting that objectively indicates that the vehicle is being used for transportation." *California v. Carney*, 471 U.S. 386, 394, 105 S.Ct. 2066, 2070 (1985). Although in *Carney* the Supreme Court did not decide whether the vehicle exception applies to a motor home being used as a residence, the Court indicated that relevant factors "in determining whether a warrant would be required in such a circumstance is its location, whether the vehicle is readily mobile or instead, for instance, elevated on blocks, whether the vehicle is licensed, whether it is connected to utilities, and whether it has convenient access to a public road." 471 U.S. at 394 n.3.

In the instant action Green testified he was using the trailer as his home, and he used a generator for power. The government does not appear to dispute that Green and the two individuals at the trailer appeared to be leveling the area to create a permanent location for the trailer. Nor does the government contend that Green's trailer was readily mobile or licensed. Based on the facts in this case the Court concludes that Green's trailer does not fit within the bounds of the vehicle exception.

The government finally argues that the discovery of the rifle fits within the "plain view" exception or the "inevitable discovery" exception to the requirement of a warrant. As its name

9

suggests, the "plain view" exception applies only to objects that are in "plain view" with an incriminating character that is "immediately apparent." *Horton v. California*, 496 U.S. 128, 136, 110 S.Ct. 2301, 2308 (1990). Further, "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must have a lawful right of access to the object itself." *Id.* at 137. Investigator Matheny's removal of the rifle from underneath black plastic wedged under Green's trailer without a warrant clearly indicates that the "plain view" exception does not apply in this action. The government argues that the officers in the helicopter observed Green place the rifle under the trailer, and thus it was in their "plain view." However, nothing in the record indicates that the officers in the helicopter viewed Green place the rifle under the trailer. Lieutenant Cavanaugh testified that one of the officers in the helicopter, Chief Taylor, indicated that he did not see exactly where Green had placed the weapon. Thus, the "plain view" exception does not apply.

The "inevitable discovery" doctrine applies where "the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means." *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509 (1984). However, as the Sixth Circuit has determined, "to hold that simply because the police could have obtained a warrant, it was therefore inevitable that they would have done so would mean that there is inevitable discovery and no warrant requirement whenever there is probable cause." *United States v. Johnson*, 22 F.3d 674, 683 (1994). The Sixth Circuit has been "unwilling to adopt such a radical departure from the Fourth Amendment warrant requirement precedent." *Id.* at 684. In the instant action, although the officers perhaps could lawfully have obtained a warrant to search Green's trailer, that is not sufficient for application of the "inevitable

10

discovery" doctrine. Thus, the government has failed to demonstrate that its warrantless search of Green's trailer fits into any of the exceptions to the warrant requirement under the Fourth Amendment.

III. Conclusion

For the reasons stated herein, the Court **GRANTS** Green's motion [Court Doc. No. 24] to suppress the rifle and any other evidence relating to the search of his trailer and its immediate surroundings.

SO ORDERED.

ENTER this 17th day of November 2005.

                                            */s/  R. Allan Edgar*
                                              R. ALLAN EDGAR
                                      UNITED STATES DISTRICT JUDGE