UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 4:05-cr-15 |
| | ) | Judge Edgar |
| JERRY GLENN GREENE | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| JERRY GLENN GREENE, | ) | |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Case Nos. 4:05-cr-15 / 4:10-cv-15 |
| | ) | Judge Edgar |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Jerry Glenn Greene ("Greene") moves for post-conviction relief under 28 U.S.C. § 2255. [Court Doc. 124]. He also makes an amended (second) motion to disqualify District Judge R. Allan Edgar pursuant to 28 U.S.C. §§ 144 and 455 [Court Doc. 133], and a motion for a new trial under Fed. R. Crim. P. Rule 33. [Court Doc. 135]. After reviewing the record, the Court concludes that these motions are without merit and must be denied. The record conclusively shows that Greene is not entitled to any relief. There is no need for an evidentiary hearing.

## I.   Facts and Procedural History

On February 11, 2005, two deputy sheriffs employed by the Warren County Sheriff's Department, Danice Taylor and John Black, were on patrol flying in a police helicopter over rural farmland in Warren County, Tennessee searching for clandestine methamphetamine laboratories and

1

several all-terrain vehicles (four-wheelers) that had recently been reported as stolen. They happened to fly the helicopter over the farm where Greene resided in a mobile home or trailer. The deputies did not have any information indicating that Greene and his farm were involved in methamphetamine laboratories or stolen motor vehicles.

Flying at an altitude of approximately 200 - 250 feet, the deputies observed a dead cow lying on the ground near a creek on Greene's farm. As the deputies circled around in the helicopter to get a closer look at the cow carcass, they observed Greene driving his pickup truck at a high rate of speed toward the helicopter. Greene abruptly stopped his pickup truck with the driver's side facing the helicopter. Greene jumped out of his pickup truck, raised a rifle to his shoulder, and aimed the rifle toward the helicopter. Greene used the rifle to "lead" the flying helicopter in the same way that a hunter follows the flight path of a bird he intends to shoot.

The two deputies were not sure whether Greene fired a shot from the rifle. After observing Greene aim and brandish the rifle, the helicopter pilot performed emergency evasive maneuvers which posed a substantial risk and danger to the helicopter and its occupants. The helicopter pilot, Deputy Black, sent out a radio message requesting backup assistance from other police officers.

The officers in the helicopter remained airborne in a position where they could maintain visual surveillance of Greene. They observed Greene drive his pickup truck back to his trailer. Greene exited the truck with the rifle in his hand. Greene went behind his trailer for a short time where he was briefly out of sight and his actions could not be observed by the two deputies in the helicopter. When Greene returned to view and walked back around his trailer, the two deputies in the helicopter observed that Greene was no longer carrying the rifle.

Several police officers responded to the radio call for assistance and went to Greene's farm. One of the responding officers was Jackie Matheny, Jr. ("Matheny") who was employed by the

Warren County Sheriff's Department. The police officers initially stopped at a barbed wire fence on the borderline of Greene's farm. After the officers arrived at the fence, Greene drove his pickup truck across a farm field at a high rate of speed toward them. When Greene approached the police officers, he was ordered to stop, get out of the truck, and lie down on the ground. Greene complied with this order. The officers secured Greene with handcuffs, escorted him across the fence line, and placed him in a police car.

Police officers searched Greene's pickup truck but did not find a rifle or other firearm. The officers found a gun belt containing ammunition, a box of .22 caliber ammunition, and a box of 12-gauge shotgun shells in the truck. The presence of the ammunition indicated that Greene probably possessed a rifle and shotgun, but the police found no firearms on Greene's person and in his truck.

The officers entered further onto Greene's farm and went down a road leading to his trailer. The officers searched inside and outside of the trailer for about 30 minutes without a search warrant and without Greene's permission. While searching the area immediately outside of the trailer, officer Matheny noticed some black plastic on the ground that was raised up. When Matheny lifted up the black plastic, he found a loaded .22 caliber rifle. The clean rifle was not rusted or dirty. An officer unloaded the rifle and it was seized as evidence. It is reasonable to infer that Greene deliberately placed the rifle underneath the black plastic to conceal and hide it from the police after Greene had aimed and brandished the rifle at the police helicopter.

The federal grand jury returned an indictment against Greene. Greene privately retained attorney Michael D. Galligan ("Galligan") to represent him. Galligan was assisted by co-counsel John P. Partin ("Partin"). Attorneys Galligan and Partin made a motion to suppress evidence of the rifle found by the police underneath Greene's trailer. [Court Doc. 24]. The government opposed the motion and District Judge Edgar held a suppression hearing. Attorneys Galligan and Partin were

successful in their efforts. On November 17, 2005, District Judge Edgar issued a memorandum and order granting the motion to suppress the rifle as evidence. [Court Doc. 36].

Attorneys Galligan and Partin won a significant victory for Greene by prevailing on the motion to suppress the rifle as evidence. The trial was set to commence on February 7, 2006. Greene became dissatisfied with Galligan and Partin because they could not obtain a dismissal of the indictment prior to trial. Greene wanted Galligan and Partin to present frivolous legal arguments challenging the authority and jurisdiction of the federal grand jury to return the indictment, and challenging the District Court's subject matter jurisdiction.

On January 12, 2006, Galligan and Partin moved to dismiss the first superseding indictment as deficient. [Court Doc. 42, 43]. It was argued that even if the conduct alleged in the first superseding indictment was true, it did not constitute a violation of the federal statutes charged.

Before this Court could rule on the motion to dismiss, Galligan and Partin moved to withdraw as counsel for Greene on January 12, 2006. Galligan and Partin submitted their sworn affidavits in support of the motion to withdraw. [Court Doc. 45, 46, 47]. The motion to withdraw and affidavits speak for themselves, and need not be repeated here. Greene chose to discharge attorneys Galligan and Partin. The record contains a copy of a letter that Greene wrote to Galligan dated January 23, 2006, notifying Galligan that Greene had terminated their attorney-client relationship and setting forth the reasons for Greene's decision. [Court Doc. 50-5]. In their motion to withdraw as counsel, Galligan and Partin also moved for a continuance of the trial so that Greene could have an opportunity to employ a new attorney, if he chose to do so.

On January 24, 2006, the federal grand jury returned a two-count second superseding indictment against Greene. [Court Doc. 48]. Count One charged that on February 11, 2005, Greene attempted to violate 18 U.S.C. § 32(a)(5) in that he attempted to perform an act of violence against

4

individuals on an aircraft in the special aircraft jurisdiction of the United States, and such act was likely to endanger the safety of the aircraft, in violation of 18 U.S.C. § 32(a)(7). Count Two charged that on February 11, 2005, Greene knowingly brandished a firearm during and in relation to a crime of violence that may be prosecuted in a court of the United States, that is, the criminal offense charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

On January 27, 2006, Greene represented himself and filed a *pro se* document captioned "NOTICE, TO INVOKE THIS COURT'S JURISDICTION TO ACT IN ITS MINISTERIAL DUTY TO QUASH INDICTMENT FOR FRAUD AND LACK OF JURISDICTION." [Court Doc. 51]. Greene wanted the Court to quash and dismiss the indictment as being illegal and fraudulent. Greene argued that this District Court lacked subject matter jurisdiction over the incident involving the police helicopter flying over his farm. Greene contended that his farm was private property and the helicopter incident did not involve any property of the United States of America or any officials and employees of the United States government.

Greene further argued that the grand jury had illegally returned the indictment because there was no criminal complaint under Fed. R. Crim. P. 3 and no arrest warrant or summons issued under Fed. R. Crim. P. 4. Greene took the untenable position that, in the absence of a complaint under Fed. R. Crim. P. 3 and an arrest warrant or summons issued under Fed. R. Crim. P. 4, the grand jury was without any authority and jurisdiction to return the indictment pursuant to Fed. R. Crim. P. 7. This forms the basis for Greene's argument that the District Court lacked subject matter jurisdiction to proceed with the trial.

These arguments by Greene attacking the validity of the indictment and challenging the District Court's subject matter jurisdiction are entirely without merit. Despite Greene's persistent arguments to the contrary, the federal grand jury had the authority and jurisdiction to return the

5

second superseding indictment – as well as the original and first superseding indictments – pursuant to Fed. R. Crim. P. 7. In order for the grand jury to return the indictment pursuant to Fed. R. Crim. P. 7, it was not necessary for there to first be a complaint under Fed. R. Crim. P. 3 and an arrest warrant or summons issued under Fed. R. Crim. P. 4, as argued by Greene. He is mistaken on this point of law. Fed. R. Crim. P. 3 and 4 do not limit or place any restrictions on the grand jury's authority and jurisdiction to return the indictment against Greene pursuant to Fed. R. Crim. P. 7. Under the Federal Rules of Criminal Procedure, there are different ways to initiate a criminal case. One way is for some person to make a complaint under Fed. R. Crim. P. 3. Another separate, alternative way to initiate a criminal case is for a grand jury to return an indictment pursuant to Fed. R. Crim. P. 7, which is what occurred in Greene's case.

This Court completely rejects Greene's frivolous argument that the second superseding indictment is illegal, fraudulent, and void *ab initio* for lack of subject matter jurisdiction. The second superseding indictment was lawfully issued by the grand jury pursuant to Fed. R. Crim. P. 7. This District Court at all times had subject matter jurisdiction over Greene's criminal case. District Judge Edgar and the prosecutor, Assistant United States Attorney Steve Neff, explained this to Greene prior to trial. Greene refused to accept the Court's denial of his jurisdictional argument. Greene discharged his attorneys, exercised his right to represent himself, and sought to prevent the trial based on his untenable theory that the second superseding indictment should be dismissed for lack of subject matter jurisdiction.

The case came before District Judge Edgar for a final pretrial conference on January 30, 2006. In the wake of the grand jury's return of the second superseding indictment, the final pretrial conference was postponed. District Judge Edgar held a hearing on the motion by attorneys Galligan and Partin to withdraw as defense counsel. Greene was present in person at the hearing and

answered questions.  District Judge Edgar sought to clarify whether Greene intended to represent himself *pro se* at the trial or be represented by an attorney.  Greene responded that he wanted to handle his own legal matters but denied that he was representing himself.  Greene said that he did not want to be represented at trial by an attorney.  Greene argued that the Court should dismiss the indictment on the ground of lack of jurisdiction and there should not be a trial.  By making this oral argument to the Court, Greene was representing himself *pro se.*  District Judge Edgar informed Greene that there would be a trial and the Court needed to know whether he planned to represent himself at trial or retain new counsel.

The following excerpt is taken from the transcript of the hearing on January 30, 2006:

Judge Edgar: [D]o you want to represent yourself or not?  Is that what you want to [do]?  Do you want to represent yourself?

Greene: No.  I'm not representing myself.  I just want to handle my own legal matters to the best of my knowledge ....

Judge Edgar: You want to handle the trial in this case?

Greene: I will not represent myself.

Judge Edgar: Pardon.

Greene: I'm not representing myself.

Judge Edgar: You want to handle your own legal matters, but you don't want to represent yourself?  That's a contradiction there in terms.  I mean, that doesn't make sense, Mr. Green....  Do you want to conduct your own trial?

Greene: Judge, they (sic) shouldn't be a trial over something –

Judge Edgar: Well, I think you need to anticipate that there is going to be a trial unless the government just up and drops the case.

AUSA Neff: Not likely, Judge.

[Transcript of January 30, 2006 hearing, Court Doc. 57 pp. 26-27].

Later during the same hearing on January 30, 2006, District Judge Edgar granted the motion by Galligan and Partin to withdraw as Greene's counsel. The following colloquy occurred:

> Galligan: I don't think we've been ineffective at all. I don't think the Court thinks so.... However, I think it's best that we're relieved now, but at the same time, if [Greene] decides that he's made a mistake, I will walk right back in the case.
>
> Judge Edgar: Okay.... I think it would be very difficult in view of the allegations that [Greene] has made here for Mr. Galligan to continue. It's going to be – I can tell you right now, this is a fairly complex case. This is not your everyday criminal charge.... [Are] you going to try to hire somebody else or are you just going to go ahead and represent yourself ...?
>
> Greene: I want to think about it, Judge....
>
> Judge Edgar: I'll give you until February 17th. You let me know by February 17th what you want to do.
>
> Greene: .... I want you to tell him he's fired....
>
> Judge Edgar: He's fired. Okay.

[Transcript of January 30, 2006 hearing, Court Doc. 57 pp. 36-37].

The Court granted the defendant's motion for a continuance of the trial. The trial was rescheduled to begin on March 21, 2006, with a final pretrial conference on March 20, 2006. Greene was ordered to advise the Court by February 17, 2006, whether he was going to employ a new attorney to represent him at the trial or Greene planned to represent himself. [Court Doc. 52]. Greene was given a reasonable extension of time to consider his options and make a decision. Greene failed to comply with the order by the deadline of February 17, 2006.

On February 21, 2006, Greene, acting *pro se,* filed his affidavit and a memorandum of law. [Court Doc. 59, 59-1]. This Court liberally construed and treated these documents as a motion by Greene to dismiss the second superseding indictment. Greene argued that the indictment was illegal

8

or fraudulent and the federal grand jury lacked jurisdiction to return the indictment against him.

On March 10, 2006, this Court issued a memorandum and order [Court Doc. 61] denying Greene's *pro se* motion to dismiss the second superseding indictment as frivolous. The Court also denied the motion to dismiss the first superseding indictment filed by attorneys Galligan and Partin. [Court Doc. 42, 43]. Although Greene took the position that he was not representing himself, his conduct clearly established that he was representing himself. Greene filed *pro se* motions with the Court in an effort to have the indictment dismissed prior to trial. [Court Doc. 51, 59].

In the meantime, on March 8, 2006, Greene filed a *pro se* petition for writ of prohibition in the Sixth Circuit Court of Appeals pursuant to Rule 21 of the Federal Rules of Appellate Procedure. [Sixth Circuit Docket No. 06-5334]. Greene wanted the Sixth Circuit to issue a writ prohibiting District Judge Edgar from proceeding any further in the criminal case and conducting a trial. The main thrust of Greene's argument was that the indictment was deficient, illegal and fraudulent, and that District Judge Edgar and the District Court lacked subject matter jurisdiction. Greene's petition for writ of prohibition was based primarily on his frivolous argument that the federal grand jury had no authority and jurisdiction to return an indictment in the absence of a complaint under Fed. R. Crim. P. 3 and an arrest warrant or summons issued under Fed. R. Crim. P. 4.

On June 7, 2006, after Greene's criminal trial had been held, the Sixth Circuit Court of Appeals denied the petition for writ of prohibition. [Court Doc. 82]. The Sixth Circuit noted that Greene had been found guilty at trial and was awaiting sentencing. The Sixth Circuit said that following entry of a final judgment of conviction, Greene could take a direct appeal and present the jurisdictional issues had raised in the petition for writ of prohibition. Greene did raise his jurisdictional argument on direct appeal but it was rejected and denied by the Sixth Circuit on January 29, 2009.

The mere filing of Greene's petition for writ of prohibition in the Sixth Circuit did not transfer all jurisdiction over Greene's criminal case to the Sixth Circuit and it did not prevent District Judge Edgar from going forward with the trial. District Judge Edgar was not required to cancel or postpone Greene's trial because the Sixth Circuit did not issue a writ of prohibition prior to the trial.

Because Greene failed to comply the order to advise this District Court by February 17, 2006, whether he was going to either represent himself or employ a new attorney, District Judge Edgar held a pretrial conference on March 10, 2006 to clarify how the trial was going to proceed. Greene was present in person at the hearing. Greene again asserted his belief that the indictment was illegal and fraudulent predicated on his frivolous theory that, without a sworn complaint under Fed. R. Crim. P. 3 and without an arrest warrant or summons issued under Fed. R. Crim. P. 4, the grand jury had no authority and jurisdiction to issue the indictment under Fed. R. Crim. P. 7. Greene argued that the District Court lacked subject matter jurisdiction, the second superseding indictment should be dismissed, and the case could not proceed to trial. District Judge Edgar denied again Greene's jurisdictional arguments. District Judge Edgar informed Greene that the second superseding indictment would not be dismissed, the Court had subject matter jurisdiction, and the case would be going to trial during the week of March 21-25, 2006.

During the hearing on March 10, 2006, District Judge Edgar asked Greene several times to state whether he planned to represent himself at the trial or employ a new attorney. District Judge Edgar advised Greene that the criminal charges against him were very serious and it was in his best interest to be represented by an attorney. District Judge Edgar inquired whether Greene wanted counsel appointed to represent him or, in the alternative, standby counsel. Greene refused and insisted that he did not want an attorney of any kind. Greene said that he was not representing

himself and he persisted in arguing that the indictment should be dismissed prior to trial. District Judge Edgar determined that Greene had waived of his right to counsel. [Transcript of March 10, 2006 hearing, Court Doc. 101, pp. 22-23].

The following excerpt is taken from the transcript of the hearing on March 10, 2006:

Judge Edgar: ... I can't help you during the trial. Do you understand that, I can't help you, you'll have to do it on your own. Do you understand that ?

Greene: Just like I say, again Judge, I put in a writ of prohibition --

Judge Edgar: Well, let me just tell you --

Greene: They told me its out of your hands.

Judge Edgar: Well, they told you wrong.

Greene: Until they tell me different, Judge, that's the way I'm looking at it.

Judge Edgar: They told you wrong, Mr. Green. It's not out of my hands. And I'm sorry you feel that way.

Greene: I do. I'm sorry.

Judge Edgar: You're just wrong. So, we're going to proceed with this trial. Now, my question to you was do you understand that if we go to trial and you represent yourself that I cannot help you?

Greene: I'm not representing myself.

Judge Edgar: You're not? Who's representing you?

Greene: Just like I'm not representing myself.

Judge Edgar: Well, so, if we go to trial week after next, how are we going to do this, who are you going to have there?

Greene: Well, that's where I put in a writ of prohibition.

11

| Judge Edgar: | Well, the writ of prohibition is not going to prevent the trial, Mr. Green. So, we're going to be - - we will be trying this case week after next in Winchester, Tennessee. So, you need to make some plans. |

[Transcript of March 10, 2006 hearing, Court Doc. 101 pp. 10-11].

Later, during the same hearing the following colloquy occurred:

| Judge Edgar: | In my opinion, you need a lawyer who would be able to do a better job for you than you can do for yourself. And I urge you not to represent yourself. And now, in light of all this, do you want a lawyer -- |

| Greene: | No, sir. |

| Judge Edgar: | -- in the case? |

| Greene: | No, Sir. I do not. |

| Judge Edgar: | You do not? |

| Greene: | I'm not going to call it a case. I call it a matter, you know. |

| Judge Edgar: | Well, whatever you want to call it. It's a pretty important matter. Do you want the Court to appoint a lawyer? |

| Greene: | No, sir. |

| Judge Edgar: | Let me ask you this. If you don't want a lawyer, what about standby counsel, in other words -- |

| Greene: | I don't. |

| Judge Edgar: | I would be glad to appoint somebody who at least would be -- |

| Greene: | No, I don't even -- |

| Judge Edgar: | Well, let me finish. |

| Greene; | Okay. |

| Judge Edgar: | Who at least would be with you in court and would be able to at least tell you the way that you need to go about select- |

12

|  |  |
|---|---|
|  | ing a jury and questioning witnesses and advise you about whether or not you should take the witness stand and other things. And so, I'm telling you that these are important matters that could affect your life. And I could appoint somebody to be your standby counsel just for that purpose only. Do you want me to do that? |
| Greene: | No sir, Judge. And nor do I want an elbow counsel. I don't want none of them. |
| Judge Edgar: | You don't want none of them? |
| Greene: | If there is any elbow counsel, I don't want neither one, none of this. |
| Judge Edgar: | And why not? |
| Greene: | I just want the Court to show me a affidavit of complaint which makes a warrant to have this indictment. This indictment just come -- |
| Judge Edgar: | You know what's going to happen if you're convicted on this, Mr. Green. You're going to be put in prison. You're going to be taken into custody. |
| Greene: | Will that be done lawfully? |
| Judge Edgar: | Yes. |
| Greene: | And by showing a affidavit of complaint which don't exist? |
| Judge Edgar: | I assure you if you are taken into custody it will be done lawfully. |
| Greene: | So they'll come up with a affidavit of complaint then to show where they got the warrant, then take it to get indict-ment, show where the indictment come from? |
| Judge Edgar: | I assure you that if you are taken into custody that will be done legally. So, I'm just telling you right now. And that -- let me ask you this. Is this decision on your part strictly voluntary, is this what you really want to do, to not have a lawyer? |

13

| Greene: | Not on this matter, Judge. I don't want no lawyer or no counsel or no standby or no elbow [counsel]. |
|---|---|
| Judge Edgar: | Okay. I will allow you -- let me just add one other thing. I have talked to a lawyer in Winchester, who is willing to be standby counsel for you. |
| Greene: | I refuse it. |
| Judge Edgar: | And you refuse? |
| Greene: | I refuse for a counsel. |
| Judge Edgar: | Okay. Let's go ahead then and have a final pretrial conference. |

[Transcript of March 10, 2006 hearing, Court Doc. 101 pp. 13-16].

On March 13, 2006, the Court appointed attorney Robert S. Peters ("Peters") to serve as standby counsel for Greene at the trial. [Court Doc. 64]. Peters is a very experienced trial attorney with many years of law practice. The Court exercised its authority to appoint Peters as standby counsel over Greene's objection. *McKaskle v. Wiggins,* 465 U.S. 168 (1984); *Faretta v. California,* 422 U.S. 806, 834 n. 46 (1975); *United States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007). There is nothing in the record showing that Greene ever requested any assistance from standby counsel Peters before the trial commenced. Prior to trial and during the entire first day of the trial, Greene insisted on exercising his right to represent himself and maintain complete control over the litigation of his criminal case while rejecting assistance from standby counsel Peters.

The jury trial commenced on March 22, 2006. Greene was present and represented himself. Mr. Peters was present as standby counsel. At the beginning of the trial prior to voir dire of the jury, the following colloquy occurred:

| Greene: | Okay. I want it to be clear for the record that I do not want counsel at any time, nor do I want standby counsel at any time. And I want, if I could, to handle my own legal affairs myself, and I do have that right. |
|---|---|

14

Judge Edgar: You have that right.  Now, I have appointed Mr. Peters as standby counsel for you, and I can do that whether or not you want standby counsel.  I have done that.  You do not have to utilize the services of Mr. Peters if you do not want to.  He is available and will be available during the course of this trial if you wish to consult him on any issues or about anything that happens here in the courtroom, you may do so, but you are not obligated to do so.  I would recommend that you do so, because I think it's in your best interest, but Mr. Peters will be here, and you can, you can use him however you want to.

[Transcript of First Day of Trial on March 22, 2006, Court Doc. 99 p. 3].  Greene repeated his argument that the Court lacked subject matter jurisdiction.  Greene also stated: "And, again, I don't want no - - I don't want any time no counsel or no elbow counsel."  [Court Doc. 99 p. 4].

The trial commenced with Greene representing himself.  Greene made an opening statement to the jury and cross-examined the government's witnesses.  On the first day of trial, Greene made a significant mistake while cross-examining a government witness.  Greene asked a question about whether the investigating police officers searched for any other firearms besides the rifle found underneath Greene's trailer and whether the rifle was fully loaded with ammunition.  The prosecutor moved the Court to allow the rifle to be introduced into evidence, notwithstanding the Court's prior ruling on the motion to suppress, because Greene had opened the door.  Over Greene's objection, the Court correctly granted the motion and allowed the rifle to be introduced into evidence.

At the end of the first day of trial just before the proceedings were adjourned, Greene expressed concern about whether some of his witnesses would attend the second day of trial to testify for the defense.  The Court told Greene that if his witnesses had been served with subpoenas, then they were obligated to come to the trial.  Greene replied that he had not had a chance to serve his witness with subpoenas because the Court had revoked his bond and he was being detained in custody.  The following colloquy occurred:

15

| | |
|---|---|
| Greene: | I'm talking about I hadn't got a chance to subpoena them. |
| Judge Edgar: | Well - - okay. Of course, that's your responsibility since you're representing yourself here. |
| Greene: | I'm not representing myself. |
| Judge Edgar: | I told you that there would be some problems, but. |
| Greene: | No money, no time. I never said I was representing myself. |

[Court Doc. 99 p. 134].

When the second day of trial commenced, Greene changed his mind about representing himself and Greene allowed Peters to represent him for the remainder of the trial. Greene testified that he placed his loaded rifle under the black plastic on the ground outside of his trailer. He denied aiming and brandishing the rifle at the police helicopter. Greene testified that he was only waiving a long stick in the air that he used to herd cattle. Greene contended that the two deputies in the helicopter were mistaken when they thought that they saw him aiming and brandishing a rifle at the helicopter, and that the object in his hand was only the long stick.

The jury did not believe Greene's testimony. The jury returned its verdict finding him guilty as charged on Counts One and Two of the second superseding indictment. On August 9, 2006, this Court entered the judgment of conviction. [Court Doc. 86]. Greene was sentenced to a term of imprisonment of 84 months plus one day.

Greene took a direct appeal from the judgment of conviction to the Sixth Circuit Court of Appeals and represented himself *pro se.* [Court Doc. 105]. On January 29, 2009, the Sixth Circuit affirmed the judgment of conviction and dismissed the appeal. [Court Doc. 106].

On direct appeal Greene raised the following issues. Greene argued that the District Court erred in permitting the suppressed rifle found by the police underneath Greene's trailer to be introduced into evidence at trial. The Sixth Circuit rejected this argument stating:

16

> Although Greene contends that he elicited testimony about the suppressed rifle only to establish that he did not shoot at the helicopter, the testimony also permitted the inference that the firearm [rifle] found on the property was not the one used by Greene to interfere with the aircraft. Thus, the district court did not abuse its discretion in permitting the government to introduce the rifle with testimony that it was indeed the rifle Greene pointed at the helicopter.

[Court Doc. 106, p. 2].

Greene further argued on appeal that the second superseding indictment was deficient and should have been dismissed. Greene contended that the second superseding indictment did not give him fair notice of the charges because: (1) Count One did not include a mens rea element; (2) the elements of the offense set forth in Count One did not comport with the statutory subsection he was charged with violating, 18 U.S.C. § 32(a)(7); (3) the original indictment did not charge Greene with brandishing a firearm as subsequently charged in Count Two of the second superseding indictment; and (4) there was no sworn affidavit or complaint under Fed. R. Crim. P. 3 supporting the federal grand jury's issuance of the indictment under Fed. R. Crim. P. 7.

The Sixth Circuit determined that there was no plain error and it rejected all of Greene's arguments as without merit. The Sixth Circuit decided that nothing in Fed. R. Crim. P. 7 requires that the indictment be supported by an affidavit or complaint under Fed. R. Crim. P. 3. [Court Doc. 106, p. 2]. The Sixth Circuit's opinion is the law of this case and disposes of Greene's arguments about an unlawful or fraudulent indictment and lack of subject matter jurisdiction.

Greene filed a petition for writ of certiorari which was denied by the Supreme Court of the United States on October 5, 2009. *Greene v. United States*, 558 U.S. 910 (2009). After exhausting his direct appeal, Greene filed a *pro se* motion for post-conviction relief under 28 U.S.C. § 2255.

## II.   __Amended Motion Under 28 U.S.C. § 2255 [Court Doc. 124]__

A.    **Standard of Review**

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct a judgment of conviction or sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the federal district court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by federal law, or is otherwise subject to collateral attack.

As a threshold standard to relief a § 2255 motion must allege: (1) an error of constitutional magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).  Greene bears the burden of establishing an error of federal constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

A § 2255 motion is not a substitute for a direct appeal.  Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under § 2255 to do service for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  To obtain relief under 28 U.S.C. § 2255 for a nonconstitutional error, Greene must establish either: (1) a

fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill v. United States*, 368 U.S. 424, 428 (1962); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Grant,* 72 F.3d at 505-06.

An evidentiary hearing is unnecessary because there are no genuine issues of material fact in dispute and the record conclusively shows that Greene is not entitled to relief under § 2255. An evidentiary hearing is not required where the allegations and claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Brain v. United States*, 2011 WL 1343344, * 2 (E.D. Tenn. April 8, 2011); *Jones v. United States*, 2010 WL 1882122, * 1 (E.D. Tenn. May 11, 2010).

The burden is on Greene to articulate sufficient facts to state a viable claim for relief under § 2255. Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Brain*, 2011 WL 1343344, at * 2; *Jones*, 2010 WL 1882122, at * 2.

Greene raises the following claims in his amended § 2255 motion. [Court Doc. 124].

**B.**     **First Claim: Validity of Second Superseding Indictment and Subject Matter Jurisdiction**

Greene claims that the second superseding indictment was deficient and should have been dismissed because, in his view, it failed to charge federal criminal offenses and did not establish this Court's subject matter jurisdiction. Greene contends that the second superseding indictment did not set forth all the elements of the crimes and failed to give him proper notice of the criminal charges in violation of the Sixth Amendment to the United States Constitution. It is further argued that the indictment was defective because it did not comply with Fed. R. Crim. P. 7(c)(1).

This claim fails. With regard to his argument that the second superseding indictment was deficient by not setting forth the elements of the crimes charged and failing to give him proper notice of the criminal charges, Greene essentially raised this same issue in his direct appeal from the judgment of conviction. The Sixth Circuit Court of Appeals rejected Greene's claim that the indictment was deficient. The Sixth Circuit decided that the second superseding indictment adequately charged Greene with the criminal offenses. [Court Doc. 106, p. 2].

Greene cannot utilize a § 2255 motion to relitigate the same issues that were presented and decided on his direct appeal to the Sixth Circuit. Issues which are presented and decided on direct appeal may not be relitigated in a 28 U.S.C. § 2255 proceeding absent exceptional circumstances, i.e. actual (factual) innocence or an intervening retroactive change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 189 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996). There are no exceptional circumstances here that would allow Greene to relitigate this same issue which was decided by the Sixth Circuit on his direct appeal. Greene does not have a credible claim of actual (factual) innocence based on new reliable evidence and there is no intervening retroactive change in the law.

Furthermore, Greene's claim must also be denied because it is without merit. An indictment

does not have to be put in the most definite and certain terms possible.  Fed. R. Crim. P. 7(c)(1)

provides in part:

> The indictment or information must be a plain, concise, and definite
> written statement of the essential facts constituting the offense charged
> and must be signed by an attorney for the government.  It need not
> contain a formal introduction or conclusion.  A count may incorporate
> by reference an allegation made in another count.  A count may allege
> that the means by which the defendant committed the offense are
> unknown or that the defendant committed it by one or more specified
> means.  For each count, the indictment or information must give the
> official or customary citation of the statute, rule, regulation, or other
> provision of law that the defendant is alleged to have violated.

The Federal Rules of Criminal Procedure are "designed to eliminate technicalities in criminal

pleadings and are to be construed to secure simplicity in procedure."  *United States v. Resendiz-*

*Ponce*, 549 U.S. 102, 110 (2007) (quoting *United States v. Debrow*, 346 U.S. 374, 376 (1953)).

Rule 7(c)(1) does not contemplate or require detailed allegations in an indictment. *Id.*  In Greene's

case, the second superseding indictment complied with Fed. R. Crim. P. 7(c)(1) and it was not

deficient. The indictment contained a plain, concise, and definite statement of the essential facts

constituting the criminal offenses charged.

Based on his flawed argument that the second superseding indictment did not comply with

Fed. R. Crim. P. 7(c)(1), Greene goes on to claim that he was deprived of the Sixth Amendment

right to be informed of the nature of the criminal charges against him.  The Sixth Amendment

provides that in all criminal prosecutions, the accused shall have the right "to be informed of the

nature and cause of the accusation."

This Sixth Amendment claim is without merit.  The second superseding indictment gave

Greene fair notice and informed him of the criminal charges in compliance with Fed. R. Crim. P.

7(c)(1) and the Sixth Amendment.  There is no violation of Rule 7(c)(1) and the Sixth Amendment

in Greene's case.

The Court reads the indictment as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all of the necessary implications. *United States v. McClellan*, 436 Fed. Appx. 479, 487 (6th Cir. 2011); *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007); *United States v. Reed*, 77 F.3d 139, 140 n. 1 (6th Cir. 1996) (en banc). The Court employs a common sense construction of the indictment to determine whether it sufficiently informed Greene of the criminal offenses. *United States v. Edington*, 2013 WL 2097342, * 2 (6th Cir. May 16, 2013); *United States v. Maney*, 226 F.3d 660, 663 (6th Cir. 2000); *Allen v. United States*, 867 F.2d 969, 971 (6th Cir. 1989). The indictment is liberally construed in favor of its sufficiency. *United States v. Davis*, 300 Fed. Appx. 393, 398 (6th Cir. 2008); *McAuliffe*, 490 F.3d at 531; *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002).

Applying this standard of review, the Court has no difficulty finding that the second superseding indictment provided Greene with fair notice of the crimes charged. An indictment is sufficient under the Fifth and Sixth Amendments if it: (1) sets forth the essential elements of the criminal offense; (2) fairly informs the defendant of the criminal charge against which he must defend; (3) protects the defendant against double jeopardy; and (4) enables the Court to determine whether the facts alleged are sufficient to withstand a motion to dismiss or support a judgment of conviction. *Resendiz-Ponce*, 549 U.S. at 108; *United States v. Hamling*, 418 U.S. 87, 117 (1974); *McClellan*, 436 Fed. Appx. at 487; *United States v. Anderson*, 605 F.3d 404, 411-12 (6th Cir. 2010); *McAuliffe*, 490 F.3d at 531; *United States v. Salisbury*, 983 F.2d 1369, 1373 (6th Cir. 1993).

An indictment is usually sufficient if it sets forth the criminal offense charged using the words of the federal statute itself, as long as "those words of themselves fully, directly, and expressly, without any uncertainty and ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105

22

U.S. 611, 612 (1882)); *see also McClellan*, 436 Fed. Appx. at 487; *McAuliffe*, 490 F.3d at 531;

*United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992). The language

of the federal statute may be used in the general description of the criminal offense in the indictment,

but the recitation of the statutory language must be accompanied with a statement of the facts and

circumstances as will inform the accused of the specific offense. *Hamling*, 418 U.S. at117;

*McClellan*, 436 Fed. Appx. at 487; *McAuliffe*, 490 F.3d at 531; *Salisbury*, 983 F.2d at 1374.

In Greene's case, the second superseding indictment is sufficient under the Fifth and Sixth

Amendments because it meets all of these essential requirements. The second superseding

indictment correctly uses and tracks the language from the applicable federal criminal statutes.

Next, Greene contends that his conduct – aiming and brandishing the rifle at the police

helicopter in flight – did not involve a "civil" aircraft or an aircraft within the special aircraft

jurisdiction of the United States within the meaning of 18 U.S.C. § 32(a).[1] Based on this false

premise, Greene argues that the federal grand jury lacked the authority and jurisdiction to return the

second superseding indictment against him. It is further argued that because the second superseding

indictment was "illegal and fraudulent," this District Court lacked subject matter jurisdiction to hold

a trial and convict Greene under Count One for violating 18 U.S.C. § 32(a)(7) since the statute

allegedly does not apply to his conduct.

This specific claim is procedurally defaulted because Greene did not raise it on his direct

appeal to the Sixth Circuit Court of Appeals. Greene can raise this claim in his 28 U.S.C. § 2255

motion only if he demonstrates either: (1) cause for the procedural default and actual prejudice; or

---

[1] The initial indictment against Greene alleged that the police helicopter was a "civil aircraft." The term "civil aircraft" was removed and omitted from Count One of the second superseding indictment which was amended to correctly allege that the helicopter was an "aircraft in the special aircraft jurisdiction of the United States."

23

(2) actual (factual) innocence. *Bousley,* 523 U.S. at 621; *Frady*, 456 U.S. at 167-68; *VanWinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011); *Waucaush v. United States*, 380 F.3d 251, 254 (6th Cir. 2004); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).

The Court finds that Greene has not met his burden of showing cause and prejudice to overcome or excuse his procedural default. The procedural default was not caused by ineffective assistance of counsel. Greene represented himself *pro se* on direct appeal in the Sixth Circuit and he has no one but himself to blame for failing to raise this issue.

Moreover, Greene cannot show that the procedural default may be overcome or excused on the ground of actual innocence. Actual innocence means factual innocence, not mere legal insufficiency. *Bousley,* 523 U.S. at 623; *Schlup v. Delo,* 513 U.S. 298, 321 (1995); *VanWinkle,* 645 F.3d at 369. The record conclusively shows that Greene is not actually (factually) innocent of committing the criminal offense charged in Count One of the second superseding indictment. He does not present a credible claim of actual innocence based on new reliable evidence.

Assuming *arguendo* that Greene could somehow clear the procedural default hurdle (which he fails to do), this claim must be dismissed for the alternative reason that it is without merit. Greene argues that his aiming and brandishing the rifle at the police helicopter in flight did not involve an "aircraft within the special aircraft jurisdiction of the United States" within the meaning of 18 U.S.C. § 32(a). This argument fails as a matter of law.

The police helicopter in flight was an aircraft in the special aircraft jurisdiction of the United States within the meaning of 18 U.S.C. § 32(a)(1) and other applicable federal statutes. When Greene committed his offense on February 11, 2005, 18 U.S.C. § 32(a) provided in part:

> Whoever willfully –
>   (1) sets fire to, damages, destroys, disables, or wrecks *any aircraft in the special aircraft jurisdiction of the United States* or any civil aircraft used, operated, or employed in interstate, overseas, or foreign air commerce;

...
   (5) performs an act of violence against or incapacitates any individual on any such aircraft, if such act of violence or incapacitation is likely to endanger the safety of such aircraft;
... or;

   (7) *attempts* or conspires *to do anything prohibited under paragraphs (1) through (6) of this subsection*;

shall be fined under this title or imprisoned not more than twenty years or both.  (Emphasis supplied).

Greene was properly found guilty and convicted of violating 18 U.S.C. § 31(a)(7) as charged in Count One of the second superseding indictment.  The question raised here by Greene concerns the correct definition of the phrase "any aircraft in the special aircraft jurisdiction of the United States" as provided in 18 U.S.C. § 31(a)(1).

18 U.S.C. § 31 provides that the terms "aircraft" and "special aircraft jurisdiction of the United States" shall have the meaning ascribed to those terms in 49 U.S.C. §§ 40102(a) and 46501.  49 U.S.C. § 40102(a)(6) defines "aircraft" as meaning "any contrivance invented, used, or designed to navigate, or fly in, the air."  As this Court reasonably construes the plain language of 49 U.S.C. § 40102(a)(6), the term "aircraft" includes helicopters which are designed and used to fly in the air.  The Court decided this same issue in Greene's case prior to the trial.  [Court Doc. 61, p. 3].

49 U.S.C. § 46501 provides in part:

   (2) "special aircraft jurisdiction of the United States" includes any of the following aircraft in flight:
      (A) a civil aircraft of the United States.
      (B) an aircraft of the armed forces of the United States.
      (C) *another aircraft in the United States*. (Emphasis supplied).

The police helicopter was an aircraft in flight in the special aircraft jurisdiction of the United States pursuant to 49 U.S.C. § 46501(2)(C).  It is immaterial whether the police helicopter also met the definition of a civil aircraft.  Count One of the second superseding indictment charged Greene

with violating 18 U.S.C. § 32(a)(7) by attempting to perform an act of violence against individuals on an aircraft in the special aircraft jurisdiction of the United States, not a "civil aircraft." Greene can be indicted on this charge even though the police helicopter was not a civil aircraft. When the grand jury returned the second superseding indictment, it was not necessary to charge in Count One that the offense involved a "civil aircraft." And because Count One did not charge that it was a civil aircraft, the government was not required to prove it at the trial. To obtain a valid conviction on Count One of the second superseding indictment, the government was not required to prove that the police helicopter was a civil aircraft. Instead, the government met its burden of proving beyond a reasonable doubt that the police helicopter was an aircraft in flight in the special aircraft jurisdiction of the United States.

When Greene aimed and brandished the rifle at the police helicopter in flight in the United States, he violated 18 U.S.C. § 32(a)(7). The federal grand jury had proper authority and jurisdiction to return the second superseding indictment charging Greene with violating 18 U.S.C. § 32(a)(7). Count One of the second superseding indictment is not deficient. This defeats Greene's related argument that this District Court lacked subject matter jurisdiction to conduct the trial and convict him under Count One of the second superseding indictment for violating 18 U.S.C. § 32(a)(7). Because Greene's conduct violated § 32(a)(7), the federal grand jury and this District Court had subject matter jurisdiction over the criminal charge against Greene. All of Greene's arguments on this issue are frivolous.

## C. Second Claim: Sixth Amendment Right to Be Informed of Nature of Criminal Charges and Right to Assistance of Counsel

The Sixth Amendment provides that in all criminal prosecutions the accused shall have the right to the assistance of counsel, and the right to be informed of the nature and cause of the accusation. Greene claims that he was deprived of these rights in the following ways.

Greene repeats his argument that the second superseding indictment was deficient by not complying with Fed. R. Crim. P. 7(c)(1) and violating his Sixth Amendment right to be informed of the nature of the criminal charges. For the reasons expressed *supra*, the Court rejects Greene's claim that the second superseding indictment was deficient and should have been dismissed. This claim has no merit. The second superseding indictment complied with Fed. R. Crim. P. 7(c)(1) and it gave Greene fair notice of the criminal charges in accordance with the Sixth Amendment. The second superseding indictment did not violate Fed. R. Crim. P. 7(c)(1) and the Sixth Amendment.

Greene contends that he did not unequivocally assert his right to represent himself, and he did not competently, knowingly and voluntarily waive his Sixth Amendment right to be represented by counsel. This claim must be dismissed because it is procedurally defaulted and without merit.

Because Greene did not raise this claim on his direct appeal in the Sixth Circuit, it is procedurally defaulted. He can raise this procedurally defaulted claim in his 28 U.S.C. § 2255 motion only if he demonstrates either: (1) cause for the procedural default and actual prejudice; or (2) actual innocence. *Bousley,* 523 U.S. at 621; *Frady,* 456 U.S. at 167-68; *VanWinkle*, 645 F.3d at 369; *Waucaush*, 380 F.3d at 254; *Peveler*, 269 F.3d at 698. Greene has not met his burden of showing cause and prejudice to overcome or excuse the procedural default. He cannot show that the procedural default on appeal was caused by ineffective assistance of counsel. Greene represented himself on appeal. Moreover, Greene cannot show that the procedural default may be excused on the ground of actual innocence. He does not have a credible claim of actual innocence based on any new reliable evidence.

Even if we assume *arguendo* that Greene could somehow clear the procedural default hurdle (which he fails to do), this claim must be dismissed for the alternative reason that it is without merit. Greene fails to meet his burden of showing that he did not make a knowing and voluntary waiver of his Sixth Amendment right to be represented by counsel. *Johnson v. Zerbs*, 304 U.S. 458, 468-69

(1938); *Maranian v. Jackson*, 14 Fed. Appx. 310, 314 (6th Cir. 2001) (In habeas proceedings, petitioner bears the burden of proving that he did not knowingly and voluntarily waive his constitutional right to the assistance of counsel). The record conclusively establishes that this District Court warned Greene that his refusal to be represented by an attorney necessarily meant that he would be proceeding *pro se* and representing himself at trial. Based on Greene's persistent refusal to be represented by counsel after he discharged attorneys Galligan and Partin, this Court correctly determined that Greene made a knowing and voluntary waiver of his right to counsel.

After he discharged attorneys Galligan and Partin, Greene made statements that he did not want to represent himself while simultaneously insisting he also did not want to be represented by an attorney. Greene wanted the indictment dismissed without a trial. Greene persisted in making his frivolous argument that the federal grand jury had no authority or jurisdiction to return the indictment and the District Court lacked subject matter jurisdiction. When this Court informed Greene that the indictment would not be dismissed and his case was going to trial, Greene took the inconsistent position that he was not representing himself and he refused to be represented by counsel. In this way, Greene continued to pursue his futile argument challenging the indictment's validity and this Court's subject matter jurisdiction. Greene sought to bring the criminal proceedings to a halt in the hopes of delaying or preventing a trial. His strategy was unsuccessful. The criminal proceeding moved forward and there was a trial despite his objections and efforts to get the indictment dismissed. Because Greene adamantly refused to be represented by counsel, he waived his Sixth Amendment right to counsel and chose to represent himself *pro se.*

Greene had a constitutional right to represent himself and present his own defense. Pursuant to 28 U.S.C. § 1654 Greene had the right to represent himself, and to personally manage and conduct his case without counsel. *Jones*, 489 F.3d at 248. By exercising the right to represent himself, Greene waived his Sixth Amendment right to be represented by counsel. *Farettta v. California*, 422

U.S. 806, 833-35 (1975); *United States v. Williams*, 641 F.3d 758, 766-67 (6th Cir. 2011); *United States v. Young*, 310 Fed. Appx. 784, 789 (6th Cir. 2009); *Moore v. Haviland*, 531 F.3d 393, 401-02 (6th Cir. 2008) (these two rights are mutually exclusive and a defendant's invocation of one right is necessarily intertwined with a waiver of the other right); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006); *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004). Greene cannot engage in self-representation and at the same time assert his Sixth Amendment right to be represented by counsel. There is no constitution right to such hybrid representation. *Id*. at 681 n. 12; *United States v. Mosely*, 810 F.2d 93, 97-98 (6th Cir. 1987); *Jones v. Lewis*, 2010 WL 1257878, * 12 (E.D. Tenn. March 25, 2010).

The record in Greene's case establishes that he waived his Sixth Amendment right to be represented by counsel. At the beginning of the trial prior to voir dire of the jury, Greene unequivocally asserted his constitutional right to represent himself and refused to be represented by counsel. Greene said: "I want it to be clear for the record that I do not want counsel at any time, nor do I want standby counsel at any time. And I want, if I could, to handle my own legal affairs myself, and I do have that right." [Transcript of First Day of Trial on March 22, 2006, Court Doc. 99 p. 3].

In some ways, the facts in Greene's case are atypical of most waiver-of-counsel cases. During pretrial conferences Greene did not make a straightforward assertion of his right to self-representation. Greene stated that he was not representing himself but went on to present legal arguments to the Court and file *pro se* motions seeking relief which obviously constitute self-representation. Greene engaged in dilatory tactics designed to manipulate the judicial system and delay or frustrate the Court's ability to proceed with the trial. This he cannot do. Greene cannot stop the criminal justice process in its tracks by employing the strategy of rejecting representation by counsel and refusing self-representation. *Swiger v. Brown*, 86 Fed. Appx. 877, 882 (6th Cir. 2004).

This Court informed Greene that the case was going to trial and he could either represent himself or be represented by counsel. Greene even objected to the appointment of standby counsel. Based on his conduct, Greene effectively chose to represent himself *pro se*. By rejecting all of his options except self-representation, Greene necessarily chose self-representation. *King*, 433 F.3d at 492; *Swiger*, 86 Fed. Appx. 877. Greene's waiver by conduct required no more than the minimum *Farreta* warnings. *King*, 433 F.3d at 493.

For a waiver of the Sixth Amendment right to be represented by counsel to be effective, it must be a knowing and voluntary waiver. A defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently make a choice to represent himself. *Farettta*, 422 U.S. at 835. A defendant should be made aware of the dangers and disadvantages of self-representation, so that he knows what he is doing and his choice is made with eyes open. *Id.*; *Williams*, 641 F.3d at 766-67; *Moore*, 531 F.3d at 402; *King*, 433 F.3d at 490; *Cromer*, 389 F.3d at 680. The transcripts of the pretrial conferences show that District Judge Edgar complied with *Faretta* and made Greene aware of the dangers and disadvantages of self-representation. District Judge Edgar advised Greene that it would be to his benefit to be represented by counsel and it would be a serious mistake to represent himself at the trial. Greene chose to represent himself, and he knowingly and voluntarily waived his right to the assistance of counsel.

Greene further argues that this Court failed to make a determination whether he competently waived his right to the assistance of counsel. Greene contends that he was not competent to make a knowing and voluntary waiver of his right to counsel. He does not allege that he was mentally incompetent. Greene does not contend that he was unable to represent himself because he was insane or suffering from a mental impairment. Rather, Greene argues he was incompetent in the sense that he lacked sufficient training, knowledge, and experience in federal criminal law and trials to effectively represent himself without an attorney.

30

This is insufficient to show that Greene was not competent to make a knowing and voluntary waiver of his right to counsel. Greene seeks to apply the wrong standard for determining his competence in this context.

Before allowing a criminal defendant to represent himself *pro se*, a court must make a determination whether the defendant is competent to decide the issue of self-representation. In *Godinez v. Moran*, 509 U.S. 389 (1993), the Supreme Court clarified the proper standard of competency necessary to waive the right to counsel. It is the same as the level of mental competency required for a defendant to stand trial. *Id*. at 391. The standard of competency necessary to waive the right to counsel is whether the defendant has a rational as well as a factual understanding of the criminal proceedings against him. *Id*.; *Dusky v. United States*, 362 U.S. 402 (1960); *United States v. Colbert*, 55 Fed. Appx. 225, 229 (6th Cir. 2002). This relatively low level of competency is appropriate because the competence required for a defendant to waive the right to counsel is only the mental competence to knowingly waive that right, not the competence (knowledge of the law and skill) to represent himself. *Godinez*, 509 U.S. at 399; *Colbert*, 55 Fed. Appx. at 229 n. 1; *see also Farettta*, 422 U.S. at 835-36.

This competency determination is a prerequisite to finding that a defendant has made a knowing and voluntary waiver of the right to counsel. *Godinez*, 509 U.S. at 400-01; *Colbert*, 55 Fed. Appx. at 230. A competency hearing is not required in every case in which a defendant seeks to represent himself and waive the right to counsel. A competency determination is only required when a court has reason to doubt a defendant's competence. *Godinez*, 509 U.S. at 402 n. 13; *Colbert*, 55 Fed. Appx. at 230.

In Greene's case, this Court had no reason to doubt that he was competent to make the decision to knowingly and voluntarily waive his right to counsel, and to represent himself. Greene had a rational as well as a factual understanding of the criminal proceedings against him. There was

31

no need for this Court to conduct a separate competency hearing for Greene. *Id*. In his § 2255

motion, Greene does not contend that he was incompetent in the sense that he lacked a rational and

factual understanding of the criminal proceedings against him.

### D.   Third Claim:  Right to Fair Trial Under Fifth Amendment

Greene claims a violation of his right to a fair trial guaranteed by the Due Process Clause in

the Fifth Amendment to the United States Constitution.  There are two parts to this claim.

### 1.   Sufficiency of Second Superseding Indictment

Greene claims that Count One of the second superseding indictment was deficient and should

have been dismissed because it did not allege the mens rea element, a specific act of violence, and

a specific overt act.  This claim fails.  On Greene's direct appeal from the judgment of conviction,

the Sixth Circuit Court of Appeals rejected his arguments that the second superseding indictment

was deficient. The Sixth Circuit decided that the second superseding indictment adequately charged

him with the criminal offenses. [Court Doc. No. 106, p. 2].  The Sixth Circuit explicitly rejected

Greene's argument that Count One was deficient because it did not allege a mens rea element.

Greene cannot utilize a 28 U.S.C. § 2255 motion to relitigate the same issues that were

presented and decided on his direct appeal to the Sixth Circuit Court of Appeals.  Issues which are

presented and decided on direct appeal may not be relitigated in a § 2255 proceeding absent

exceptional circumstances such as actual (factual) innocence or an intervening retroactive change

in the law. *Wright*, 182 F.3d at 467; *Jones*, 178 F.3d at 796; *Oliver*, 90 F.3d at 189; *DuPont*, 76 F.3d

at 110-11.  There are no exceptional circumstances here that would allow Greene to relitigate these

same claims and issues which were decided by the Sixth Circuit on his direct appeal.  Greene does

not have a credible claim of actual (factual) innocence based on any new reliable evidence and there

is no applicable intervening retroactive change in the law.

In addition to these claims being barred from relitigation under 28 U.S.C. § 2255 due to the

Sixth Circuit's decision on Greene's direct appeal, these claims are also without merit. For the reasons expressed *supra*, the second superseding indictment is sufficient under the Fifth and Sixth Amendments to the United States Constitution.

This Court completely rejects Greene's Fifth Amendment due process claim that his right to a fair trial was violated based on the argument that Count One of the second superseding indictment failed to allege a specific act of violence or a specific overt act. Count One charged Greene with violating 18 U.S.C. § 32(a)(7) by attempting to violate 18 U.S.C. § 32(a)(5). To charge an attempt offense, the indictment need not specifically allege a particular overt act. *Resendiz-Ponce*, 549 U.S. at 107-08; *Davis*, 300 Fed. Appx. at 398-99.

The second superseding indictment is liberally construed in favor of its sufficiency. *Davis*, 300 Fed. Appx. at 398; *McAuliffe*, 490 F.3d at 531; *Davis*, 306 F.3d at 411. The indictment must be read as a whole and construed in a practical, common sense manner with all of the necessary and reasonable implications flowing from it. *McClellan*, 436 Fed. Appx. at 487; *McAuliffe*, 490 F.3d at 531. Applying this standard of review, the Court concludes that the second superseding indictment was not deficient and there is no violation of Greene's Fifth Amendment right to due process of law and a fair trial.

There was no violation of his right to a fair trial because prior to trial it was made abundantly clear to Greene through Counts One and Two of the second superseding indictment, in combination with the hearing on the motion to suppress the rifle as evidence and the pretrial conferences, that he was being charged with and prosecuted for aiming and brandishing a firearm at the police helicopter in flight. This certainly did not come as an unfair surprise to Greene at the trial. Count Two charged Greene with brandishing the firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Prior to trial Greene was informed that the act of violence supporting the Count One attempt charge under 18 U.S.C. § 32(a)(7) was his aiming and brandishing the firearm at the police helicopter. There was

33

no ambiguity, confusion, or lack of clarity on this salient point prior to or during Greene's trial.

This is not a case where Greene went to trial without fair notice that he was charged with aiming and brandishing a firearm at the police helicopter in flight. All contentions by Greene to the contrary are frivolous. A reasonable person reading Counts One and Two of the second superseding indictment as a whole, and reviewing the transcripts of the suppression hearing, would readily comprehend and understand it. It is disingenuous for Greene to now claim that he lacked fair notice of the nature of the criminal charges and he was deprived of a fair trial.

### 2. <u>Prosecutorial Misconduct</u>

Greene claims a violation of his right to a fair trial based on the prosecutor's references during the trial to the fact that the deputies in the helicopter were searching for illegal methamphetamine operations. Greene complains that the prosecutor's opening statement at the trial poisoned or unfairly prejudiced the jury against him by falsely linking Greene to methamphetamine. The following excerpt is taken from the prosecutor's opening statement:

> [W]e have a problem in southeast Tennessee. And the problem we
> have here, one of the problems, one of the major problems we have
> here is methamphetamine. And we have a group of law enforcement
> officers who have taken it upon themselves to take risks to try to help
> alleviate the problem of methamphetamine in this area. And they are
> using various tools and trying to take a comprehensive approach to trying
> to resolve this problem. And it's kind of like when I was in the Army
> and the commanders in the Army often would try to marshal all of
> their combat elements together in order to make an effective fighting
> force. And that's essentially what law enforcement is trying to do here.
>
> One of the ways that they're trying to do that in Warren County is that
> they've decided to employ an aircraft, a Bell OH-58 helicopter in order
> to combat the methamphetamine problem in that particular area. And,
> of course, there are other uses for it too, ferret out marijuana patches, to
> do search and rescue missions, and whatnot.
>
> But, on February 11th of 2005, there were two officers in a helicopter
> on that day who were engaged in the activity of trying to locate metham-
> phetamine trash along or in the rural areas of Warren County. And I

34

think it's fairly obvious that using a helicopter can be an effective tool. Using a helicopter enables you to see things and get into areas that you might not otherwise be able to get into just from the road because you can see things from the air.

And on that day their mission was to find meth trash and that would be the kind of things that methamphetamine cooks throw away after the cooking process is complete. They'll throw it in the woods. They'll throw it in the streams. And there are some dangerous chemicals involved with those, and it can help find the locations where perhaps a methamphetamine lab is located, et cetera. And so, that was their primary mission on that day. They also had a secondary mission of looking for some stolen four-wheelers and trying to be able to see if they could spot those from the air in the helicopter on this day.

Earlier in the day they had been flying and they had found some meth trash, found a couple of indications of [methamphetamine] labs in the area. ... [T]hey went back up fling again looking for meth the trash and the stolen four-wheelers. And they ended up flying in the Blue Hills area of Warren County, near the defendant's property. There they were flying along the creekline. ... They're flying along over the defendant's property looking for some of these items that I mentioned already. They fly along to the end of the creek bed, and they turn back, and they're flying back over where the defendant's trailer and pasture and cattle are located, they saw a dead cow on the ground, and that drew their attention at first.

[Court Doc. 76 pp. 15-17, Transcript of First Day of Trial, pp. 16-19].

The trial transcript establishes that the prosecutor did not mention methamphetamine in an effort to prejudice the jury against Greene. The prosecutor merely provided fair, reasonable, and accurate background information to the jury to explain the reason why the two sheriff's deputies were flying in the helicopter. Any prejudice to Greene was minimal and harmless. During the trial it was made very clear to the jury that there was no allegation and no evidence that Greene had any involvement with methamphetamine operations on his farm. Deputy Black, the helicopter pilot, testified that he did not see any indication of a methamphetamine lab while flying over Greene's farm. Deputy Black also testified that he had never looked for a methamphetamine lab on Greene's

farm. [Court Doc. 76 pp. 15-17, Transcript of First Day of Trial, pp. 85-86].

Because Greene did not raise this prosecutorial misconduct claim on his direct appeal to the Sixth Circuit Court of Appeals, it is procedurally defaulted. Greene can raise this procedurally defaulted claim in his 28 U.S.C. § 2255 motion only if he demonstrates either cause for the procedural default and actual prejudice, or actual (factual) innocence. The Court finds that Greene has not met his burden of showing cause and prejudice to overcome or excuse the procedural default. The procedural default on direct appeal was not caused by ineffective assistance of counsel. Greene also cannot show that the procedural default may be overcome or excused on the ground of actual innocence. Greene does not have a credible claim that he is actually innocent based on any new reliable evidence.

The prosecutorial misconduct claim is also without merit. The Sixth Circuit has developed a two-part test for reviewing claims of prosecutorial misconduct based on statements made by a prosecutor during a criminal trial. First, the Court determines whether the prosecutor's statements were improper. If the statements were proper, the inquiry ends and it is unnecessary to address the second part of the test. If the prosecutor's statements were improper, then the Court makes a determination whether the improper statements were flagrant and warrant reversal of a conviction. *United States v. White*, 563 F.3d 184, 193 (6th Cir. 2009); *United States v. Rose*, 522 F.3d 710, 715-16 (6th Cir. 2008); *United States v. Galloway*, 316 F.3d 624, 632 (6th Cir. 2003); *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999).

Greene fails to meet his burden of showing either prong of the test. This Court finds that the challenged statements made by the prosecutor during Greene's trial were fair and proper. The prosecutor's references to the fact that the primary mission of the deputies in the helicopter was to search for illegal methamphetamine operations in and around the general area near Greene's farm were permissible under the Federal Rules of Evidence. The prosecutor had a right to provide

36

accurate background facts to the jury to explain the reason why the two deputies were in flight in the helicopter. Greene's claim of prosecutorial misconduct fails to survive the first part of the test.

Assuming *arguendo* that the prosecutor's statements were somehow improper, the Court further finds under the second part of the test that the statements were not flagrant and do not warrant vacating Greene's judgment of conviction under 28 U.S.C. § 2255. To determine whether a prosecutor's improper statements are flagrant, the Court balances four factors: (1) whether the statements tended to mislead the jury and prejudice the defendant; (2) whether the statements were isolated or pervasive; (3) whether the statements were deliberately placed before the jury; and (4) whether the evidence against the accused is otherwise strong. *Galloway*, 316 F.3d at 632. None of these factors standing alone is dispositive. *Id*.

Even if the Court finds that prosecutor's improper statements were not flagrant, the Court may nonetheless grant relief from a judgment of conviction if it determines that: (1) the evidence of the defendant's guilt is not overwhelming; (2) the defense raised objections to the improper statements during the trial; and (3) the trial judge did not cure the improper statements by giving an admonishment or instruction to the jury. *Galloway*, 316 F.3d at 632; *Francis*, 170 F.3d at 550.

After reviewing the trial transcript in Greene's case, this Court finds that the prosecutor's statements were not flagrant. These factors not weigh in Greene's favor. The prosecutor's statements did not tend to mislead the jury and prejudice Greene's defense. The prosecutor's statements were not made deliberately in an effort to mislead the jury and prejudice Greene's defense. The incriminating evidence against Greene was otherwise very strong. Greene represented himself on the first day of trial when the prosecutor made the opening statement to the jury. During the trial Greene did not raise a specific objection and did not request the Court to give an admonishment or special instruction to the jury.

Accordingly, Greene's claim that his Fifth Amendment due process right to a fair trial was

violated based on alleged prosecutorial misconduct must be dismissed.

### D. Fourth Claim: Ineffective Assistance of Counsel

Greene claims that standby counsel Peters was ineffective during the trial and the attorney appointed to represent Greene on direct appeal in the Sixth Circuit was ineffective. This Court concludes that all claims of ineffective counsel are without merit.

### 1. Standard of Review: *Strickland* Test

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the to right to assistance of counsel for his defense. Ineffective assistance of counsel that violates the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the criminal defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004).

*Strickland* establishes a two-part test for deciding Sixth Amendment claims of ineffective counsel. First, Greene must show that his attorney's performance was deficient. Second, Greene is required to demonstrate that his counsel's deficient performance caused him actual prejudice. *Strickland*, 466 U.S. at 687; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell,* 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003); *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000).

The first prong of the *Strickland* test requires Greene to show that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995). The Court's scrutiny of the reasonableness of counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy.

38

*Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90; *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 268; *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

The second prong of the *Strickland* test requires Greene to show that counsel's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of counsel was so manifestly deficient that defeat was snatched from the hands of probable victory. *Thelen v. United States,* 131 Fed. Appx. 61, 63 (6th Cir. 2005); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996); *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Greene must show there is a reasonable probability that, but for the errors and deficient performance of counsel, the result would have been different and more favorable to him. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason,* 320 F.3d at 617; *Wickline,* 319 F.3d at 819. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

### 2. Performance by Standby Counsel Prior to Trial and During First Day of Trial

The Court appointed attorney Peters to act as standby counsel ten days before the trial. Greene claims that prior to trial Peters was ineffective by failing to: (1) correspond or communicate with Greene; (2) conduct an independent investigation and prepare the case for trial; and (3) make

39

sure that Greene had copies of and understood the Federal Rules of Criminal Procedure and the Federal Rules of Evidence so that Greene would know how to question or cross-examine witnesses, give opening and closing statements to the jury, get exhibits admitted into evidence, and the various other rules and procedures for litigating a federal criminal case at a jury trial. Greene complains that Peters was ineffective for not tutoring him in the law and transforming him into the equivalent of a trained attorney within a span of ten days leading up to the trial.

This ineffective counsel claim fails. Greene misunderstands the scope of the duties of standby counsel. Peters was appointed as standby counsel for the limited purpose of attending the trial and being available to answer Greene's questions or otherwise provide assistance at the trial as may be requested by Greene. The record shows that Peters did an excellent job, and he fulfilled all of his ethical duties and professional obligations as standby counsel. His performance as standby counsel was competent and objectively reasonable. The performance of Peters did not cause any actual prejudice to Greene's case.

There is nothing in the record showing that Greene ever requested any assistance from standby counsel Peters prior to trial. Greene did not make any pretrial request that he be provided with the Federal Rules of Criminal Procedure and the Federal Rules of Evidence. In his capacity as standby counsel, Peters was not obligated on his own initiative to conduct a pretrial investigation and prepare the case for trial in the absence of any request by Greene to do so. During the ten days leading up to the trial, it was fully understood that Greene planned to represent himself and maintain complete control over all aspects of litigating his case including the trial. Greene stated that he did not want standby counsel. Greene chose not to utilize the services of standby counsel Peters prior to trial. Accordingly, it was Greene's responsibility alone to prepare his case for trial. To the extent that Greene was not adequately prepared for trial, it is entirely his own fault.

In his capacity as standby counsel, Peters was not obligated to provide Greene with the

Federal Rules of Criminal Procedure and the Federal Rules of Evidence. If Greene had made a simple request for these items, they would have been furnished to him. Likewise, Peters was not required to take the initiative to provide Greene with pretrial lessons on how the rules of evidence and procedure could be applied at the trial. Greene never asked Peters to do this. When Greene chose to represent himself and completely rejected any representation by an attorney, he assumed the responsibility of educating himself about the applicable rules of evidence and trial procedures.

During the first day of the trial, Greene represented himself and refused to allow standby counsel Peters to represent him. It was not until the start of the second day of trial that Greene allowed Peters to take over the defense and represent him for the remainder of the trial and during the sentencing phase. During the period of time that Greene represented himself and maintained complete control over all aspects of litigating his criminal case, he cannot make out a viable Sixth Amendment claim of ineffective counsel. A defendant who exercises the right to represent himself cannot complain about the poor quality of his own defense by arguing that it amounts to ineffective counsel. *McKaskle*, 465 U.S. at 177 n. 8; *Faretta*, 422 U.S. at 834 n. 46; *United States v. Ross*, 703 F.3d 856, 882 (6th Cir. 2012); *Wilson v. Parker*, 515 F.3d 682, 696 (6th Cir. 2009); *Gall v. Parker*, 231 F.3d 265, 320 (6th Cir. 2000); *United States v. Smith*, 2907 F.2d 42, 45 (6th Cir. 1990).

Moreover, Greene's allegations that standby counsel Peters failed to conduct an investigation and prepare the case for trial are insufficient *per se* to state a viable ineffective counsel claim. To the extent that the performance of standby counsel may have been deficient, Greene merely suffered the consequences of his decision to represent himself. *Ross*, 703 F.3d at 882; *Holmes v. United States*, 281 Fed. Appx. 475, 481 (6th Cir. 2008); *Wilson*, 515 F.3d at 697; *Long v. United States*, 2011 WL 3876582, * 6 (E.D. Tenn. Aug. 31, 2011).

### 3.  Representation by Counsel During Second Day of Trial

Greene claims that after standby counsel Peters began representing him on the second day

41

of trial, Peters was ineffective by failing to: (1) raise an "intent defense" or willfulness defense;" (2) challenge the sufficiency of the indictment; (3) challenge the applicability of 18 U.S.C. § 32 to Greene's conduct on the theory that the statute only applies to civil aircraft and the police helicopter was not a civil aircraft; (4) object to the prosecutor's comments about methamphetamine; and (5) object to a jury instruction concerning Greene's state of mind and intent to commit the crime.

The Court concludes that Greene fails to meet his burden of showing either prong of the *Stickland* test. Greene fails to establish that the performance of Peters on the second day of trial was deficient and caused him to suffer actual prejudice. Counsel's performance was competent and objectively reasonable. None of these arguments or objections presented by Greene have any merit. If Peters had raised these challenges and objections, they would have been futile and denied as frivolous. Defense counsel is not required to raise or advocate meritless arguments and futile objections that have no chance of success. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *Brain*, 2011 WL 1343344, at * 11. Greene cannot establish the prejudice element of the *Stickland* test. Greene fails to show there is a reasonable probability that, but for the alleged errors and performance of Peters, the result of the trial would have been different and more favorable to him.

Next, Greene claims that Peters was ineffective by failing to challenge or raise an objection to his conviction on Count Two. Count Two charged that Greene knowingly brandished a firearm during and in relation to a crime of violence that may be prosecuted in a court of the United States, that is, the criminal offense charged in Count One, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Greene floats the theory that his conviction on Count One for violating 18 U.S.C. § 32(a) did not constitute a qualifying "crime of violence" for purposes of applying 18 U.S.C. § 924(c)(1)(A) and that Peters failed to object to the jury instruction stating otherwise. In support of this claim, Greene relies upon arguments presented by Peters during the sentencing hearing. During sentencing, Peters argued that Greene's violation of 18 U.S.C. § 32(a) was not necessarily a "crime of violence" for

42

purposes of 18 U.S.C. § 924(c)(1)(A).

This claim fails. Greene has not met his burden of showing either prong of the *Stickland* test. Greene fails to establish that counsel's performance was deficient and caused him to suffer actual prejudice. The Court finds that counsel's performance was competent and objectively reasonable. Greene's argument that his violation of 18 U.S.C. § 32(a) was not a "crime of violence" for purposes of 18 U.S.C. § 924(c)(1)(A) is without merit. The term "crime of violence" is defined in 18 U.S.C. § 924(c)(3)(A) as meaning an offense that is a felony and "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Greene's conviction on Count One of violating 18 U.S.C. § 32(a) was a crime of violence. Greene was convicted of attempting to perform an act of violence against an aircraft (police helicopter) and that offense necessarily included the attempted use of force against the person or property of another. This Court correctly instructed the jury that a violation of 18 U.S.C. § 32(a) was a crime of violence for purposes of 18 U.S.C. § 924(c)(1)(A). The jury was not given an erroneous instruction on this issue.

If Peters had raised this objection to the jury instruction at trial, it would have been futile and denied as frivolous. Defense counsel is not required to raise or advocate meritless arguments and futile objections that have no chance of success. Consequently, Greene cannot establish the prejudice element of the *Stickland* test. Greene cannot show there is a reasonable probability that, if Peters had raised this specific challenge and objection to the jury instruction, the result of the trial would have been different and more favorable to him. Greene cannot show that his conviction on Count Two is erroneous and should be vacated.

### 4. Representation by Appellate Counsel on Direct Appeal

Greene claims that he was deprived of effective assistance of counsel on his direct appeal in the Sixth Circuit. This claim is without merit and must be dismissed. Greene has not met his

burden of showing either prong of the *Stickland* test. Greene fails to establish that counsel's performance was deficient and caused him to suffer actual prejudice.

The Sixth Circuit appointed attorney Paul Bruno ("Bruno") to represent Greene on appeal. Greene complains that Bruno was ineffective for not communicating with him before the appellate brief was due to be filed in the Sixth Circuit. Greene asserts that the deadline for filing his appellate brief was October 15, 2007. It is alleged that Bruno did not respond to Greene's letters. Due to the lack of communication, Greene argues that he had no choice but to represent himself on appeal.

This argument is weak because Greene requested permission to represent himself on appeal approximately one month before his appellate brief was due. Greene did not give Bruno a reasonable opportunity to communicate with Greene about this matter, prepare and file the brief, or obtain an extension of time to file the brief. On September 17, 2007, this District Court received a motion from Greene seeking to "remove" Bruno as appellate counsel and allow Greene to represent himself *pro se* on appeal. In the motion [Court Doc. No. 103], Greene stated that he represented himself at trial and he would be able to represent himself on appeal. Greene said that he was in the process of preparing his own appeal and he requested an extension of time of 30 days.

On September 25, 2007, this District Court forwarded the motion to the Sixth Circuit. [Court Doc. No. 104]. In the meantime, Greene indicates that Bruno contacted him in an effort to schedule a meeting on October 8, 2007, to discuss the appeal. [Court Doc. No. 125, p. 43]. Bruno subsequently made a motion in the Sixth Circuit for leave to withdraw as counsel and an extension of time for appellant Greene to file his brief. On December 19, 2007, the Sixth Circuit granted Bruno's motion to withdraw as counsel and granted Greene's motion to represent himself *pro se* on appeal. The Sixth Circuit also granted the motion for an extension of time to allow Greene to file his brief. [Court Doc. No. 104].

The bottom line is that Greene chose to represent himself *pro se* on appeal and he was granted a lengthy extension of time to file his appellate brief. Greene had at least three months to prepare his brief. If Greene genuinely wanted to be represented by an attorney on appeal, he could have made another motion in the Sixth Circuit seeking the appointment of new counsel to replace Bruno but Greene did not do so. Instead, Greene knowingly and voluntarily chose to represent himself on appeal. Therefore, Greene is responsible for the consequences of his decision to represent himself. Bruno's conduct did not cause any prejudice to Greene's case. After Bruno withdrew as counsel, Greene's appeal went forward and Greene filed his *pro se* brief. It is not Bruno's fault that the Sixth Circuit rejected all of Greene's arguments and dismissed the appeal.

During the time that Greene represented himself *pro se* on appeal, he cannot make out a viable claim of ineffective counsel. A criminal defendant who exercises the right to represent himself cannot thereafter be heard to complain that the poor quality of his own defense amounts to the ineffective assistance of counsel. *McKaskle*, 465 U.S. at 177 n. 8; *Faretta*, 422 U.S. at 834 n. 46; *Ross*, 703 F.3d at 882; *Wilson*, 515 F.3d at 696; *Gall*, 231 F.3d at 320.

## III.     Amended (Second) Motion to Disqualify District Judge Edgar [Court Doc. 133]

In his first motion to disqualify District Judge Edgar pursuant to 28 U.S.C. § 455, Greene argued that: (1) his conduct did not violate 18 U.S.C. § 32(a); and (2) the District Court lacked subject matter jurisdiction to allow him to be prosecuted, tried, and convicted on the second superseding indictment. [Court Doc. 120]. Greene disagreed with District Judge Edgar's decisions to deny his motions and arguments seeking to dismiss the second superseding indictment and challenging the District Court's subject matter jurisdiction. The first motion to disqualify under 28 U.S.C. § 455 was denied. [Court Doc. 123].

Greene filed a petition for writ of mandamus in the Sixth Circuit Court of Appeals seeking the disqualification of District Judge Edgar in this 28 U.S.C. § 2255 proceeding. In its order denying

45

the petition for writ of mandamus, the Sixth Circuit stated in part:

> The petitioner contends that the district judge was required to recuse himself under 28 U.S.C. § 455. The petitioner has not shown any bias or prejudice on the part of the district judge that would support his recusal. *See Liteky v. United States*, 510 U.S. 540, 549-50 (1994) (providing that generally the basis for any alleged bias or prejudice against a party to support recusal must come from extrajudicial sources).

[Court Doc. 129, p. 1].

There is presently before this Court an amended (second) motion by Greene to disqualify District Judge Edgar pursuant to 28 U.S.C. §§ 144 and 455. [Court Doc. 133]. Attached to the motion is Greene's "affidavit" or declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 wherein he states:

> 2. Affiant [Greene] attests Judge R. Allan Edgar rushed affiant into a jury trial without any competency evaluation, and without proving lawful jurisdiction over subject matter jurisdiction.
>
> 3. Affiant attests his retained counsel filed to dismiss indictment, for fraud, and that Judge R. Allan Edgar denied affiant his right to adequate procedures and facilities for a legal inquiry, in contrast to the Supreme Court's holdings in <u>Bracy v. Gramley</u>, 520 U.S. 899 (1997), which clearly demonstrated actual bias and prejudice, and presumptive bias and prejudice, and violated federally secured rights pursuant to 28 U.S.C. §§§§ 144, 351, 453 and 455.

[Court Doc. 133, p. 5].

There is also attached to the motion an "affidavit" or declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 by Lester Jon Ruston ("Ruston"). Ruston states that he owns a legal consulting business and he claims to be an "extrajudicial source." Ruston states that in his capacity as a legal consultant, he is assisting Greene to investigate and review the court records for the purpose of making motions for post-conviction relief. Ruston makes a vague, conclusory statement that he has investigated Greene's criminal case, and he has seen "clear and compelling evidence of bias and prejudice by Judge R. Allan Edgar." Ruston does not bother to explain and specify what

46

evidence he is referring to in his declaration. Ruston merely expresses his bare opinion that District Judge Edgar is biased and prejudice against Greene based on the alleged failure by Judge Edgar "to conduct a competency evaluation when evidence of *legal incompetence* was presented to him in a pre-trial hearing." (Emphasis supplied). [Court Doc. No. 133, p. 5].

Greene's amended (second) motion to disqualify District Judge Edgar pursuant to 28 U.S.C. §§ 144 and 455 [Court Doc. 133] is without merit and must be denied. The motion is predicated on the false premise that District Judge Edgar purportedly made erroneous decisions which demonstrate bias and prejudice against Greene. In short, Greene disagrees with District Judge Edgar's decisions and orders. This motion fails because the record conclusively shows that District Judge Edgar did not make any erroneous decisions or commit errors as alleged by Greene.

Greene contends that District Judge Edgar erred by: (1) rushing him into the jury trial without making an evaluation whether Greene had the "legal competence" to represent himself *pro se* at the trial; (2) rushing Greene into the jury trial without showing that the District Court had subject matter jurisdiction; and (3) denying the motion by Greene's retained counsel, Galligan and Partin, to dismiss the first superseding indictment.

As the Court reads the amended (second) motion to disqualify, Greene does not contend that he was mentally incompetent to proceed with the jury trial. Greene does not allege that he was insane or suffering from a mental impairment. Rather, Greene contends that he lacked the "legal competence" to represent himself, i.e. lacked the training, knowledge, and experience in federal criminal law and trials to represent himself at the jury trial without the assistance of counsel.

These same issues are analyzed *supra* concerning Greene's § 2255 motion. The Court rejects Greene's claim that District Judge Edgar committed errors in his criminal case. The orders and decisions by District Judge Edgar being challenged by Greene were correct as a matter of law. This eviscerates Greene's allegation that District Judge Edgar was biased and prejudiced against him.

This Court has determined that Greene was competent to exercise his right to represent himself, and competent to knowingly and voluntarily waive his Sixth Amendment right to the assistance of counsel. In an effort to help Greene with the trial, District Judge Edgar appointed attorney Peters as standby counsel. District Judge Edgar correctly decided that the federal grand jury and the District Court had subject matter jurisdiction. District Judge Edgar also made a correct decision to deny the motion by defense counsel Galligan and Partin to dismiss the first superseding indictment. [Court Docs. 42, 43, 61]. The first superseding indictment became moot when the grand jury returned the second superseding indictment. Greene went to trial and was convicted on the second superseding indictment.

28 U.S.C. § 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 455 provides in pertinent part:

> (a)     Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b)     He shall also disqualify himself in the following circumstances:
> (1)     Where he has a personal bias or prejudice concerning a party . . . .

These statutes are construed in *pari materia*. *Youn v. Track, Inc.,* 324 F.3d 409, 423 (6th Cir. 2003);

48

*Green v. Nevers*, 111 F.3d 1285, 1303 (6th Cir. 1997); *Easley v. University of Michigan Board of Regents*, 853 F.2d 1351, 1355 (6th Cir. 1988); *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983).

Motions to disqualify under 28 U.S.C. §§ 144 and 455 are entrusted in the first instance to the sound discretion of the presiding judge, here District Judge Edgar. *Green*, 111 F.3d at 1303; *In re M. Ibrahim, P.S.C.*, 751 F.2d 162, 165 (6th Cir. 1988); *United States v. Kirkpatrick*, 2005 WL 2989314, *2 (E.D. Tenn. Nov. 7, 2005). Although 28 U.S.C. § 144 on its face appears to require automatic, mandatory disqualification once a motion and supporting affidavit are filed, District Judge Edgar has the authority and duty to examine Greene's motion and affidavit to determine whether they are timely and legally sufficient. *Berger v. United States*, 255 U.S. 22, 32 (1921); *United States v. Sykes*, 7 F.3d 1331, 1339 (7th Cir. 1993); *Easley*, 853 F.2d at 1355-56; *In re City of Detroit*, 828 F.2d 1160, 1164 n. 2 (6th Cir. 1987); *United States v. Beasley*, 2006 WL 3511146, * 2 (E.D. Tenn. Dec. 4, 2006); *Kirkpatrick*, 2005 WL 2989314, at *2.

Disqualification under 28 U.S.C. § 455 is mandated if a reasonable person, knowing all of the relevant facts and circumstances, might question the judge's impartiality. A federal judge must *sua sponte* recuse under § 455 if the judge knows of facts that would undermine the appearance of impartiality in the minds of objectively reasonable persons. *Liteky*, 510 U.S. at 547-48; *Youn*, 324 F.3d at 422-23; *Reed v. Rhodes,* 179 F.3d 453, 467 (6th Cir. 1999); *Consolidated Rail Corp. v. Yashinsky*, 170 F.3d 591, 597 (6th Cir. 1999); *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993); *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990); *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990); *Easley*, 906 F.2d at 1356; *Story*, 716 F.2d at 1090-91.

The standard is an objective one. *Liteky*, 510 U.S. 540; *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 865 (1988); *Dandy*, 998 F.2d at 1349; *Sammons*, 918 F.2d at 599. A judge need not recuse or disqualify himself based solely on the subjective view of a disgruntled

49

party, no matter how strongly that subjective view is held.  *United States v. Tolbert,* 459 Fed. Appx. 541, 545 (6th Cir. 2012); *Sammons*, 918 F.2d at 599; *Browning v. Folz*, 837 F.2d 276, 279 (6th Cir. 1988); *Beasley*, 2006 WL 3511146, * 2; *Kirkpatrick*, 2005 WL 2989314, at *3.  Greene is required to show that an objectively reasonable person, knowing all of the relevant facts and circumstances in this case, would believe that District Judge Edgar is personally biased or prejudiced against him.  *Consolidated Rail Corp.*, 170 F.3d at 597; *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991).

Disqualification of a judge for bias or prejudice is subject to the limitation of the extrajudicial source doctrine.  *Liteky*, 510 U.S. at 540; *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966); *Youn,* 324 F.3d at 423; *United States v. Howard,* 218 F.3d 556, 566 (6th Cir. 2000); *United States v. Hartsell*, 199 F.3d 812, 820 (6th Cir. 1999); *Reed*, 179 F.3d at 468; *Green*, 111 F.3d at 1303-04; *Sammons*, 918 F.2d at 599.  The alleged bias and prejudice must "stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."  *Grinnell Corp.*, 384 U.S. at 583; *accord United States v. Jamieson,* 427 F.3d 394, 405 (6th Cir. 2005); *Youn*, 324 F.3d at 423; *Sammons*, 918 F.2d at 599.

Greene must present specific, non-conclusory facts showing that District Judge Edgar harbors a personal bias or prejudice against him emanating from an extrajudicial source as distinguished from a judicial source, i.e. the court proceedings in Greene's criminal case.  The alleged personal bias or prejudice must arise out of the judge's background and associations, and not from the judge's views and opinions of the law.  *Youn*, 324 F.3d at 423; *Ullmo*, 273 F.3d at 681; *Consolidated Rail Corp.*, 170 F.3d at 597; *Green,* 111 F.3d at 1303-04; *Story*, 716 F.2d at 1090-91. Greene cannot make the requisite showing of personal bias or prejudice necessary for disqualification under 28 U.S.C. §§ 144 and 455 based on an extrajudicial source merely by arguing that District Judge Edgar has made, what Greene believes to be, erroneous judicial decisions. *Beasley*, 2006 WL 3511146, * 3; *Kirkpatrick*, 2005 WL 2989314, at *3.

In *Liteky,* the Supreme Court explains some important guiding principles. Judicial rulings alone almost never constitute a valid basis to disqualify a judge on the ground of personal bias or prejudice. Only in the rarest of circumstances will a judicial decision evidence the degree of personal bias, animosity, or prejudice required for disqualification when no extrajudicial source is involved. Almost invariably, judicial decisions may be appealed but they are not a proper basis for disqualification under 28 U.S.C. §§ 144 and 455. An opinion formed by a judge on the basis of facts introduced or events occurring in the course of judicial proceedings does not constitute a valid basis for a motion to disqualify unless the judge's opinion displays "a deep-seated favoritism or antagonism that would make fair judgment impossible." Judicial remarks and comments that are critical or disapproving of, or even hostile to, a party or counsel, or to a party's case, ordinarily do not support a motion to disqualify a judge on the ground of bias or prejudice. *Liteky*, 510 U.S. at 555; *Alley v. Bell,* 307 F.3d 380, 388 (6th Cir. 2002); *Warfield v. Lebanon Correctional Inst.,* 181 F.3d 723, 731 (6th Cir. 1999); *Green*, 111 F.3d at 1303-04; *Kirkpatrick*, 2005 WL 2989314, at *4.

Greene does not present any facts to show that District Judge Edgar harbors a personal bias or prejudice against him emanating from an extrajudicial source. Greene cannot satisfy the *Liteky* extrajudicial source doctrine by presenting the affidavit of Ruston who purports to be a self-proclaimed "extrajudicial source." Greene mistakenly uses Ruston in an effort to satisfy or circumvent the *Liteky* extrajudicial source doctrine. Ruston is not an extrajudicial source within the meaning of *Liteky*. Greene is confused and misapplies the *Liteky* extrajudicial source doctrine.

Under the *Liteky* extrajudicial source doctrine, Ruston's opinion that District Judge Edgar is biased and prejudiced against Greene is immaterial. The relevant extrajudicial source under *Liteky* would be any knowledge and information that District Judge Edgar may have derived from sources outside of the official court proceedings concerning Greene. Ruston's declaration does not set forth any facts showing that District Judge Edgar harbors personal bias and prejudice against

51

Greene based on knowledge and information obtained by Judge Edgar from an extrajudicial source.

The only basis for Ruston's opinion is that District Judge Edgar made decisions and rulings on matters of law that are adverse to Greene. This is insufficient to establish that District Judge Edgar is biased or prejudiced against Greene. The judicial decisions and rulings made by District Judge Edgar in Greene's case were entirely correct. Greene's judgment of conviction was affirmed by the Sixth Circuit Court of Appeals on direct appeal.

Greene has not presented any specific facts that would support the disqualification of District Judge Edgar under 28 U.S.C. §§ 144 and 455. An objectively reasonable person reviewing the facts and circumstances in Greene's case could not believe that District Judge Edgar is personally biased or prejudiced against Greene. The decisions rendered by District Judge Edgar and the transcripts of court proceedings do not contain any improper comments or hostile remarks that display a deep-seated personal bias, prejudice, or antagonism against Greene that would make fair and impartial judgment impossible. It is not enough for Ruston to state that, in his opinion, District Judge Edgar is biased and prejudiced against Greene. Ruston is Greene's employee or agent. Ruston is not a neutral observer who is in a position to make an objectively reasonable statement on this issue.

In sum, Greene's amended (second) motion to disqualify, supported by the affidavits of Greene and Ruston, is deficient. Greene does not come close to meeting his burden of showing sufficient facts to establish there is a genuine basis for an objectively reasonable person to believe that District Judge Edgar harbors personal bias or prejudice against him emanating from an extrajudicial source. Greene fails to demonstrate that there exists personal bias or prejudice under the *Liteky* extrajudicial source doctrine. Greene disagrees with the judicial decisions and orders issued by District Judge Edgar, but this does not constitute a valid basis for disqualification and recusal pursuant to 28 U.S.C. §§ 144 and 455. Greene subjectively believes that District Judge Edgar is biased and prejudiced against him. However, District Judge Edgar need not disqualify and

recuse himself based on the mere subjective views of Greene, no matter how strongly those subjective views are held. *Tolbert,* 459 Fed. Appx. at 545; *Sammons*, 918 F.2d at 599; *Browning*, 837 F.2d at 279; *Beasley*, 2006 WL 3511146, at * 4.

Next, Greene cites *United States v. Barrett,* 982 F.2d 193 (6th Cir. 1992) for the proposition that a district judge who impermissibly intervenes in pretrial proceedings should be disqualified from adjudicating a federal prisoner's 28 U.S.C. § 2255 motion. Greene asserts: "There is clear and untenable evidence of both impermissible intervention and facial 'fraud upon the court by an officer of the court' in this matter, which requires the immediate disqualification/recusal of R. Allan Edgar." [Doc. No. 133, pp.1-2]. Greene also cites an unpublished opinion in *United States v. Bewig*, 2010 WL 4177452 (E.D. Mo. Oct. 20, 2010).

This argument fails. There are no facts in the record to support a plausible claim that District Judge Edgar committed fraud or impermissibly intervened in the pretrial proceedings in Greene's criminal case. When Greene accuses District Judge Edgar of committing fraud on the court, Greene essentially disagrees with the orders and judicial decisions of District Judge Edgar. This is insufficient to warrant the disqualification of District Judge Edgar under 28 U.S.C. §§ 144 and 455. Some of the arguments raised by Greene challenging District Judge Edgar's orders and decisions have already been reviewed and rejected by the Sixth Circuit on Greene's direct appeal.

Greene's reliance on *Barrett* and *Bewig* is misplaced. Greene's case is readily distinguishable from *Barrett,* 982 F.2d 193. In that case, Barrett entered a guilty plea and was convicted on a kidnapping charge. On direct appeal from the judgment of conviction, Barrett argued that his guilty plea was coerced and should be set aside because the district judge impermissibly participated in plea bargain negotiations in violation of Fed. R. Crim. P. 11(e)(1). The Sixth Circuit determined that the appeal had merit. The Sixth Circuit vacated the judgment of conviction and remanded the case to the district court with instructions to allow Barrett to withdraw his guilty plea

53

and assign the case to a new district judge.

*Barrett* is inapposite here. Nothing remotely similar to the situation in *Barrett* occurred in Greene's case. Greene did not enter a guilty plea. There was a jury trial and the jury returned its verdict finding Greene guilty. Unlike the facts in *Barrett*, District Judge Edgar did not engage in any impermissible participation in plea bargain negotiations in Greene's case in violation of Fed. R. Crim. P. 11(e)(1). District Judge Edgar did not engage in any conduct that could be deemed "impermissible intervention" which might show personal bias and prejudice against Greene. Greene's argument on this point is frivolous.

*Bewig*, 2010 WL 4177452, is likewise inapposite and does not support Greene's amended motion to disqualify. In *Bewig*, federal prisoner Bewig's 28 U.S.C. § 2255 motion for post-conviction relief was denied. Bewig made a motion for reconsideration and to set aside the judgment of conviction pursuant to Fed. R. Civ. P. 60(d)(3) alleging that the district judge and prosecuting attorneys had committed fraud upon the court. Bewig made vague, conclusory allegations that the district judge and the prosecuting attorneys had conspired to deprive Bewig of his federal constitutional rights during the criminal trial, and that the district judge was biased and prejudiced against him. Bewig's motion was denied in part because his vague, conclusory accusations of fraud against the district judge and the prosecutors lacked specific factual details and were insufficient to meet the burden necessary to obtain relief under Fed. R. Civ. P. 60(d)(3).

*Bewig* undercuts Greene's arguments here. If anything, *Bewig* weighs in favor of denying Greene's amended motion to disqualify District Judge Edgar. Greene's vague, conclusory allegations of fraud against District Judge Edgar are patently insufficient and fall far short of what is necessary to make out a plausible claim that District Judge Edgar is biased and prejudiced.

Accordingly, Greene's amended (second) motion to disqualify District Judge Edgar [Court

54

Doc. 133] is **DENIED**.

## IV.     Motion for New Trial Under Fed. R. Crim. P. 33 [Court Doc. 135]

Greene's motion for a new trial under Fed. R. Crim. P. 33 must be denied because it is both

untimely and without merit.  Fed. R. Crim. P. 33 provides:

> (a)  Defendant's Motion.  Upon the defendant's motion, the court may
> vacate any judgment and grant a new trial if the interest of justice so
> requires.  If the case was tried without a jury, the court may take addi-
> tional testimony and enter a new judgment.
>
> (b) Time to File.
>   (1)  Newly Discovered Evidence.  Any motion for a new trial grounded
> on newly discovered evidence must be filed within 3 years after the verdict
> or finding of guilty.  If an appeal is pending, the court may not grant a
> motion for a new trial until the appellate court remands the case.
>   (2)  Other Grounds.  Any motion for a new trial grounded on any reason
> other than newly discovered evidence must be filed within 14 days after the
> verdict or finding of guilty.

### A.     Motion Untimely

On November 2, 2010, this Court received Greene's *pro se* motion for a new trial. [Court

Doc. No. 135].  The motion has a certificate of service showing that federal prisoner Greene mailed

it on October 22, 2010.  Applying the prisoner mailbox rule, the Court treats the motion as being

filed on October 22, 2010.

Although Greene contends that his motion is based upon newly discovered evidence, this is

incorrect.  He does not present any new evidence of material facts discovered after his criminal trial

that impacts the issue of his guilt or innocence on the second superseding indictment.  In the absence

of any newly discovered evidence, Rule 33(b)(1) does not apply and Greene is required by Rule

33(b)(2) to file his motion for a new trial within 14 days after the jury's verdict of guilty.

On March 23, 2006, the jury returned its verdict finding Greene guilty on Counts One and

Two of the second superseding indictment.  Applying the 14-day time limit in Rule 33(b)(2), Greene

55

was required to file his motion for a new trial no later than the deadline of April 7, 2006, which he failed to do. Greene's motion for a new trial was filed on October 22, 2010, more than four and one-half years after the deadline of April 7, 2006 had expired.

Even if we assume *arguendo* that Greene's motion for a new trial is based on some newly discovered evidence of material facts (which it is not), the motion must still be denied as untimely. Rule 33(b)(1) provides that any motion for a new trial on the ground of newly discovered evidence must be filed within three years after the jury's verdict of guilty. If we apply the three-year time limit in Rule 33(b)(1), Greene was required to file his motion for a new trial no later than the deadline of March 24, 2009, which he failed to do. Greene did not file his motion for a new trial within the three-year time limit required by Rule 33(b)(1). The motion was filed on October 22, 2010 which is almost 19 months after the three-year time limit had expired.

In an effort to salvage his untimely motion, Greene makes a frivolous argument that his motion is timely under Rule 33(b)(1) because he filed it within three years after the judgment of conviction became final. He mistakenly relies on *United States v. Reyes*, 49 F.3d 63, 66 (2nd Cir. 1995) and *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986) which are inapposite. Greene's case is readily distinguishable from *Reyes* and *O'Dell*. The decisions in *Reyes* and *O'Dell* are based on a previous version of Fed. R. Crim. P. 33(b)(1) that was in effect prior to 1998. The previous version of Rule 33(b)(1) that was in effect prior to 1998 has been amended and superceded, and it is not applicable to Greene's case.

Prior to 1998, Fed. R. Crim. P. 33(b)(1) provided that a motion for a new trial on the ground of newly discovered evidence must be filed within two years from the final judgment. Rule 33(b)(1) was amended in 1998 to provide that any motion for a new trial on the ground of newly discovered evidence must be filed within three years after the jury verdict or finding of guilty. This 1998 amendment is discussed in the official Advisory Committee Notes to Rule 33(b)(1). In Greene's

case, this Court must apply the current language in Rule 33(b)(1) and not the former version of Rule 33(b)(1) that existed prior to 1998 when *Reyes* and *O'Dell* were decided. Greene's reliance on *Reyes* and *O'Dell* and the outdated previous verison of Rule 33(b)(1) that existed prior to 1998 is misplaced.

The time limits in Rule 33(b)(1) and (2) for filing a motion for a new trial must be read in conjunction with Fed. R. Crim. P. 45(b)(1). *United States v. Munoz,* 605 F.3d 359, 367 (6th Cir. 2010). Rule 45 provides in part:

> (b)  Extending Time.
>   (1)  In General. When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:
> >    (A)  before the originally prescribed or previously extended time expires; or
> >    (B)  after the time expires if the party failed to act because of excusable neglect.

Rule 45(b)(1)(A) does not provide a basis for the Court to grant an extension of time for Greene to file his motion for a new trial under either Rule 33(b)(1) or (2). Rule 45(b)(1)(A) is not applicable because Greene did not make a motion for an extension of time before the time limits in Rule 33(b)(1) and (2) expired.

Pursuant to Rule 45(b)(1)(B) the Court in its discretion may grant an extension of time to file a Rule 33 motion for a new trial but only if the Court determines that Greene's failure to file the motion for a new trial within the applicable time limits provided in Rule 33(b)(1) and (2) because of excusable neglect. The determination whether there is excusable neglect is an equitable one taking into account all relevant circumstances. *Pioneer Investment Services Co. v. Brunswick Associates*, 507 U.S. 380, 388 (1993); *Munoz,* 605 F.3d at 368. In determining whether there is excusable neglect, the Court balances five non-exclusive factors: (1) the danger of prejudice to the non-moving party, the United States; (2) the length of the delay and its potential impact on judicial

proceedings; (3) Greene's reason for the delay; (4) whether the delay was within the reasonable control of Greene; and (5) whether Greene has acted in good faith. *Pioneer Investment*, 507 U.S. at 395; *Munoz,* 605 F.3d at 368-73; *United States v. Ugochukwu*, 2012 WL 6730064, * 1 (N.D. Ohio Dec. 28, 2012); *United States v. Maricle*, 2010 WL 3927570, * 2 (E.D. Ky. Oct. 4, 2010).

After reviewing the record and the motion for a new trial, the Court finds that Greene has not met his burden of showing excusable neglect under Rule 45(b)(1)(B). Factors (2) - (5) clearly do not weigh in Greene's favor. He delayed filing his Rule 33 motion for a new trial until more than four and one-half years after the jury's guilty verdict. Greene does not proffer a valid reason for this extraordinarily long delay. Moreover, the delay was within the reasonable control of Greene and he has not acted in good faith. The Court further finds that the long delay has a significant negative impact on the finality of the judicial proceedings and judgment of conviction in Greene's criminal case. The Court will not grant an extension of time to Greene under Rule 45(b)(1)(B) to file his excessively late Rule 33 motion for a new trial. Accordingly, Greene's motion for a new trial under Fed. R. Crim. P. 33 shall be denied on the ground that it is untimely

### B.     Motion Without Merit

The issues and arguments raised by Greene are frivolous and do not warrant granting him a new trial. He bears the burden of demonstrating that a new trial is warranted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994); *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). To obtain a new trial under Rule 33 on the ground of newly discovered evidence, Greene is required to establish four elements: (1) the new evidence was discovered after the trial; (2) the new evidence could not have been discovered prior to or during the trial with the reasonable exercise of due diligence; (3) the new evidence is material and not merely cumulative or impeaching; and (4) the new evidence would likely produce an acquittal if the Court orders a new trial. *United States v. Turns*, 198 F.3d 584, 586-87 (6th Cir. 2000); *United States v. Gaitan-Acevedo*, 148 F.3d 577, 589

(6th Cir. 1998); *Davis*, 15 F.3d at 526, 531; *Seago*, 930 F.2d at 488.

This Court finds that Greene has not met his burden of showing any of these four elements necessary to obtain a new trial under Rule 33. Greene does not present any new evidence of material facts that was discovered after the trial and could not have been discovered earlier by him with the reasonable exercise of due diligence. There is no newly discovered evidence that would be likely to produce an acquittal if the Court were to order a new trial. There is no change in the material facts and evidence in Greene's case concerning the issue of his guilt or innocence on the second superseding indictment.

Instead of presenting newly discovered evidence of material facts concerning the issue of his guilt or innocence that would likely produce an acquittal if there were a new trial, Greene mistakenly labors to show that there were errors of law and procedure during the pretrial conferences and trial. He disputes rulings on the law made by District Judge Edgar during the trial and pretrial conferences. Greene essentially repeats many of the same arguments that he raises in his 28 U.S.C. § 2255 motion and his amended (second) motion to disqualify District Judge Edgar. As discussed *supra*, the Court has determined that these claims and arguments by Greene are without merit.

A motion for a new trial under Rule 33 on the ground of newly discovered evidence is not the proper avenue to raise such arguments concerning alleged errors of law by the District Court. To the extent that Greene claims District Judge Edgar committed errors of law, this does not constitute newly discovered evidence. Moreover, these are not matters that Greene only discovered after the trial. Greene was present in person during his trial. Greene had actual, contemporaneous knowledge of all rulings and decisions made by District Judge Edgar during the trial.

There is one final issue that requires some discussion. In a futile effort to dredge up some newly discovered evidence to support his motion for a new trial, Greene states the following:

> There exists clear "newly discovered evidence" of fraud to obstruct

59

justice in this matter, attached herewith as Exhibit "1." A firearm which was ordered "suppressed," yet appears throughout the trial appears to have "magically" changed from a .22 rifle into a machine-gun on 6/17/09, due to officers of this court.

This has clearly occurred after the trial, and was obtained through the due diligence of movant and his consulting investigator....

[Court Doc. No. 135, p. 3].

Greene is referring to a computer printout of the District Court's electronic docket sheet in his criminal case which was prepared by the Clerk of the District Court. Near the beginning of the docket sheet under the heading "Pending Counts," it provides in part: "18:924C.F VIOLENT CRIME/DRUGS/MACHINE GUN." [Court Doc. No. 135, p. 11]. This is merely a shorthand reference to Count Two of the second superseding indictment wherein Greene was charged with the felony of brandishing a firearm (rifle) during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The argument by Greene that this constitutes newly discovered evidence warranting a new trial under Rule 33 fails. The Court rejects Greene's frivolous contention that this amounts to fraud and obstruction of justice. This innocuous notation on the docket sheet did not have the effect of changing Greene's rifle into a machine gun for purposes of the trial. At most, this is merely an irrelevant, harmless typographical mistake that does not cause any actual prejudice to Greene.

The information on the case docket sheet about a "machine gun" was never presented to or considered by the jury during the trial. It had no impact whatsoever on the jury's verdict of guilty or Greene's conviction. At no time during the trial in Greene's case was his rifle mistakenly treated by the jury and the Court as a being a machine gun. Greene' trial was based on his aiming and brandishing the rifle, not a machine gun. This does not constitute newly discovered evidence of a material fact that warrants a new trial because it does not tend to prove that Greene is actually

innocent of the charges in the second superseding indictment. Greene cannot show that docket sheet's harmless reference to a "machine gun" would be likely to produce an acquittal at a new trial because it would not be admissible into evidence at trial under the Federal Rules of Evidence. Greene fails to show that this constitutes a valid reason to order a new trial under Rule 33.

## V.    <u>Conclusion</u>

Greene's amended motion for post-conviction relief under 28 U.S.C. § 2255 [Court Doc. 124] is DENIED and DISMISSED WITH PREJUDICE. A separate judgment will be entered.

Greene's amended (second) motion to disqualify District Judge Edgar [Court Doc. 133] is DENIED. The motion for a new trial pursuant to Fed. R. Crim. P. 33 [Court Doc. 135] is DENIED.

SO ORDERED.

ENTERED: September 30, 2013.

<u>      /s/ R. Allan Edgar      </u>
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE